Argued and submitted August 29, 2001, affirmed January 30, 2002

# STATE OF OREGON,
*Respondent,*

*v.*

# RANDY EVERETT DILTS,
*Appellant.*

## 99CR0172; A106034

39 P3d 276

Daniel M. Carroll, Deputy Public Defender, argued the cause for appellant. With him on the brief was David E. Groom, State Public Defender.

Robert M. Atkinson, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Landau, Presiding Judge, and Brewer, Judge, and Collins, Judge pro tempore.

BREWER, J.

**BREWER, J.**

Defendant pleaded guilty to assault in the third degree, ORS 163.165. The trial court found that the assault was motivated in part by the victim's color and imposed an upward durational departure sentence of 36 months' imprisonment. Defendant appeals from that sentence, asserting that evidence in the record does not support the trial court's finding supporting the departure. ORS 138.222(3)(a). Defendant also asserts that imposition of the departure sentence based on a fact not pleaded in the accusatory instrument or proved beyond a reasonable doubt or admitted by him violated his rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. We affirm.

We take the undisputed facts from the record. On approximately January 24, 1999, while incarcerated in the Coos County Jail, defendant struck another inmate with a plastic toilet brush. Defendant later wrote a letter to a friend in which he referred to the victim by use of a racial epithet.

At sentencing, the prosecutor sought an upward durational departure based on defendant's use of the toilet brush as a weapon and on the ground that the offense was motivated by the victim's "race or color." As pertinent to the latter factor, the prosecutor read into the record portions of defendant's letter described above and also represented to the court that, according to the victim, defendant had addressed him by use of a racial epithet before the assault.

In objecting to imposition of a departure sentence, defendant asserted that the assault

"wasn't racially motivated. It had nothing to do with color.
* * *

"* * * * *

"* * * when you're in the heat of an argument and you've got somebody telling you that—you know, in other words you're a piece of shit and all this other stuff, you kind of think of other words to tell him what he is.

"* * * * *

"And this incident was not racially motivated or nothing. My mom dates a black guy. I'm not—I'm not into this racial crap. It had nothing to do with racial."

Defendant's counsel argued that defendant's letter did not accurately reflect his motivation for committing the crime. Counsel also argued that defendant's use of a weapon was "not charged. It's not accused. And [defendant] didn't admit that as part of the—of his plea in this case." Counsel then summarized, stating that "I would ask the Court to take that into account and respectfully object to the Court considering matters that weren't alleged in the Indictment or admitted in Court as part of the plea."

The trial court found:

"[Defendant], you wrote the letter afterwards. You described the nature of the conduct, and the conduct you engaged in with another individual. You know, the words you choose describe your thought processes, and those are exactly what occurred in this process as far as I'm concerned.

"So, on that basis, I do find that there's an aggravating factor * * * and that it was motivated in part by the color of this individual."

As previously noted, defendant challenges the imposition of a departure sentence on evidentiary grounds and on the ground that it violated Due Process Clause guarantees relating to pleading and proof of his crime. We first consider whether evidence in the record supports the trial court's factual finding that defendant's offense was motivated in part by the victim's color.

■ ORS 137.080(1) provides that, "in a case where discretion is conferred upon the court as to the extent of the punishment to be inflicted," the court may hear evidence of aggravating or mitigating circumstances. "[T]he consideration of aggravating and mitigating circumstances as to felonies committed on or after November 1, 1989, including the maximum sentence that may be imposed because of aggravating circumstances, shall be in accordance with rules of the Oregon Criminal Justice Commission." ORS 137.080(2). Under ORS 137.090(1), evidence supporting the existence of an aggravating or mitigating factor includes:

"(a)  Any evidence received during the proceeding;

"(b)  The presentence report, where one is available; and

"(c)  Any other evidence relevant to aggravation or mitigation that the court finds trustworthy and reliable."

Applicable rules include OAR 213-008-0001, under which a sentencing court may depart from a presumptive sentence when it has substantial and compelling reasons to do so. In addition, OAR 213-008-0002 provides a nonexclusive list of mitigating and aggravating factors that a trial court may consider when determining whether to depart from a presumptive sentence. Under OAR 213-008-0002(1)(b)(K), the trial court may determine that substantial and compelling reasons for a departure sentence exist when the offense "was motivated entirely or in part by the race[ or] color * * * of the victim." Finally, "[i]f the sentencing judge departs from the presumptive sentence, the judge shall state on the record at the time of sentencing the substantial and compelling reasons for the departure." OAR 213-008-0001. Appellate review of a departure sentence is limited to whether the sentencing court's findings of facts and reasons justifying a departure are supported by evidence in the record and whether, as a matter of law, they constitute substantial and compelling reasons for departure. ORS 138.222(3); *State v. Wolff*, 174 Or App 367, 27 P3d 145 (2001).

As noted, the fact that commission of an offense was motivated in part by the victim's race or color is established in OAR 213-008-0002(1)(b)(K) as a substantial and compelling reason for a departure. In addition, and contrary to defendant's assertion, the record supports the trial court's finding relating to that factor. The contents of defendant's letter to his friend and the prosecutor's representations regarding defendant's earlier comments to the victim indicate that defendant had referred to the victim, both before and after the assault, by use of a racial slur. That is enough to demonstrate that, as the trial court found, defendant's conduct toward the victim was motivated, at least in part, by the victim's color.

We turn to defendant's federal constitutional challenge.[1] Defendant argues that imposition on him of a departure sentence contravened the Due Process Clause as interpreted and applied in *Apprendi v. New Jersey*, 530 US 466, 120 S Ct 2348, 147 L Ed 2d 435 (2000), in which the United States Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." According to defendant, under the sentencing guidelines, in the absence of substantial and compelling reasons to depart from a presumptive sentence, the prescribed statutory maximum for a crime is the presumptive sentence. Relatedly, defendant argues that, in effect, the departure factor in his case constituted an "essential element" of a different, aggravated offense, which was required to be pleaded and proved.

The state initially responds that defendant failed to preserve his argument relating to pleading or proof of the applicable departure factor; that, because the trial court had jurisdiction to enter a conviction for assault in the third degree, any error was not jurisdictional; and that it was not plain error. The state therefore urges us not to consider the asserted error. On the merits, the state responds that defendant's departure sentence did not violate the Due Process

---

[1] Defendant refers in passing to ORS 132.550(7), setting out, as one of several requirements relating to the content of an indictment, that it contain a "statement of the acts constituting the offense * * *"; and to ORS 132.557, requiring that "offense subcategories" be pleaded in the indictment and proved beyond a reasonable doubt. He also refers in passing to requirements relating to indictments and proof in Article I, section 11, of the Oregon Constitution, as applied in *State v. Wedge*, 293 Or 598, 652 P2d 773 (1982), and *State v. Quinn*, 290 Or 383, 623 P2d 630 (1981); to requirements relating to criminal prosecutions in Article VII (Amended), section 5(3), of the Oregon Constitution; and to the burden of proof in a criminal prosecution under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. However, defendant concedes that the indictment in this case sufficiently pleaded the crime of assault in the third degree. Conversely, he fails to identify any manner in which the cited statutory and constitutional provisions were violated here. Because defendant failed to develop his arguments based on those provisions, we decline to address them. *See State v. McNeely*, 330 Or 457, 468, 8 P3d 212, *cert den* 531 US 1055 (2000); *City of Portland v. Cook*, 170 Or App 245, 249 n 4, 12 P3d 70 (2000), *rev den* 332 Or 56 (2001).

Clause as applied in *Apprendi*, because the maximum possible sentencing guidelines sentence for an offense is established by ORS 161.605[2] and defendant's sentence was consistent with that statutory maximum.

■ We first consider whether defendant preserved his claimed constitutional error. As stated above, in objecting to imposition of a departure sentence, defendant's counsel argued that defendant's crime was not motivated by the victim's race or color and objected to the court's consideration of defendant's use of a weapon. Counsel summarized his arguments in opposition to a departure sentence by stating that defendant objected to the court "considering *matters* that weren't alleged in the Indictment or admitted in Court as part of the plea." (Emphasis added.) On that record, we conclude that defendant adequately presented to the trial court, and preserved for appeal, his claim of procedural error relating to imposition of a departure sentence based on the victim's color.

We turn to the merits. We review the constitutionality of defendant's departure sentence under ORS 138.050(1)(a) and ORS 138.222(4)(a). *See State v. Jackson,* 141 Or App 123, 125, 917 P2d 34 (1996) (defendant pleaded guilty; on appeal, she challenged her sentence on statutory and constitutional grounds; court reviewed under ORS 138.050(1)(a) and ORS 138.222(4)(a)).[3]

In *Apprendi*, the defendant fired a gun into the home of an African-American family that had recently moved into a predominantly white neighborhood. 147 L Ed 2d at 442.

---

[2] ORS 161.605 provides:

"The maximum term of an indeterminate sentence of imprisonment for a felony is as follows:

"(1) For a Class A felony, 20 years.

"(2) For a Class B felony, 10 years.

"(3) For a Class C felony, 5 years.

"(4) For an unclassified felony as provided in the statute defining the crime."

[3] *See also State v. Stewart / Billings,* 321 Or 1, 7, 892 P2d 1013 (1995) (appellate court had jurisdiction to review constitutional challenge to sentence under ORS 138.222(4)(a)); *State v. Fern,* 110 Or App 185, 187, 822 P2d 1210 (1991) ("Review of a claim that a sentencing court failed to follow a constitutional mandate in imposing the sentence is subject to review under ORS 138.222(4)(a).").

Based on that conduct, defendant pleaded guilty to, among other crimes, possession of a firearm for an unlawful purpose. *Id.* at 442-43. Under New Jersey law, that crime carried a penalty range of five to ten years. *Id.* at 442. A separate New Jersey statute provided for an extended term of imprisonment if, in committing a crime, a defendant "acted with a purpose to intimidate an individual or group of individuals because of race, color, gender, handicap, religion, sexual orientation or ethnicity." *Id.* Pursuant to the latter statute, the trial court held a post-verdict evidentiary hearing, found by a preponderance of evidence that the defendant's conduct in committing the firearm offense met the statutory sentence-enhancement criterion pertaining to race, and sentenced the defendant to 12 years' imprisonment on that offense. *Id.* at 442-43. The question thus presented was whether, contrary to New Jersey's procedure, the Due Process Clause required the sentence-enhancing factual determination to be made "by a jury on the basis of proof beyond a reasonable doubt." *Id.* at 442.

In considering that question, the Court explained that, historically, any distinction between an "element" of a felony offense and a "sentencing factor" was "unknown" and that, as a result, the "substantive criminal law tended to be sanction-specific; it prescribed a particular sentence for each offense." *Id.* at 448. The Court also explained, however, that "nothing in this history suggests that it is impermissible for judges to exercise discretion—taking into consideration various factors relating both to offense and offender—in imposing a judgment *within the range* prescribed by statute." *Id.* at 449 (emphasis in original). The Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime *beyond the prescribed statutory maximum* must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 455 (emphasis added). Applying those principles to the New Jersey sentencing scheme at issue—in which, based on a fact found by the sentencing court by a preponderance of the evidence, the defendant was sentenced to a term of imprisonment exceeding the statutory maximum for his offense of conviction—the Court concluded that New Jersey's statutory procedure violated due process. *Id.* at 459. The Court reversed the judgment of the New Jersey Supreme

Court and remanded the case for further proceedings. *Id.*; *see also State v. Crain*, 177 Or App 627, 33 P3d 1050 (2001) (discussing *Apprendi*).

Here, the facts found by the jury constituted the crime of assault in the third degree; defendant does not contend otherwise. The question therefore is whether, under the applicable statutes and rules prescribing sentences for crimes, the departure sentence imposed on defendant was within the prescribed statutory maximum sentence for that offense. Again, defendant asserts that it was not because, under the sentencing guidelines, the prescribed statutory maximum sentence for an offense is the maximum number of months in the "presumptive sentence" range for that combination of crime seriousness and criminal history, as set out in the applicable sentencing guidelines "grid block." As previously noted, the state responds that, for purposes of sentences imposed under the sentencing guidelines, the prescribed statutory maximum sentence for an offense is the one set out in ORS 161.605, providing for specified maximum indeterminate terms of imprisonment for various classes of felonies. According to the state, the presumptive sentences set out in the sentencing guidelines are merely that: presumptive, and subject to statutorily authorized departures such as the one imposed here. For the following reasons, we agree with the state and therefore conclude that defendant's sentence did not violate the Due Process Clause as applied in *Apprendi*.

■ The sentencing guidelines sentencing scheme is established by statute and by rule of the Oregon Criminal Justice Commission. ORS chapter 137; OAR chapter 213. Although portions of the scheme are set out in administrative rules, the legislature approves those rules, giving them the authority of statutory law. *State v. Langdon*, 330 Or 72, 74, 999 P2d 1127 (2000). The scheme provides for determinate sentences of specified lengths for crimes committed on or after November 1, 1989, unless, as to the length of a sentence, some other supervening statutory scheme applies. *See* ORS 137.637 ("When a determinate sentence of imprisonment is required or authorized by statute, the sentence imposed shall be the determinate sentence or the sentence as provided by

the rules of the Oregon Criminal Justice Commission, whichever is longer."); ORS 137.669 (providing in part that the guidelines "shall control the sentences for all crimes committed after the effective date of such guidelines"); *see also State ex rel Huddleston v. Sawyer*, 324 Or 597, 932 P2d 1145, *cert den* 522 US 994 (1997) (reconciling the sentencing guidelines and a separate sentencing statute, ORS 137.700). The determinate probationary and incarceration terms established by the sentencing guidelines for particular crimes are "mandatory and constitute presumptive sentences." ORS 137.669.[4] OAR 213-003-0001(16) defines the term "presumptive sentence" as "the sentence provided in a grid block for an offender classified in that grid block by the combined effect of the crime seriousness ranking of the current crime of conviction and the offender's criminal history."

As previously discussed, in addition to presumptive sentences, the sentencing guidelines scheme also provides for so-called departure sentences, including dispositional departures, in which the sentencing court imposes a prison term rather than probation or vice versa, and durational departures, in which the court imposes a sentence of greater or lesser length than the maximum or minimum of the range specified in the applicable "presumptive sentence" grid block. OAR 213-008-0001 *et seq*. As to durational departures, ORS 137.671 provides:

> "(1)   The court may impose a sentence outside the presumptive sentence or sentence range made presumptive under ORS 137.669 for a specific offense if it finds there are substantial and compelling reasons justifying a deviation from the presumptive sentence.
>
> "(2)   Whenever the court imposes a sentence outside the presumptive sentence it shall set forth the reasons for its decision in the manner required by rules of the Oregon Criminal Justice Commission."

In turn, OAR 213-008-0003(2) establishes a limitation on so-called "upward" durational departures and provides that "[a]

---

[4] As is the case for other types of sentences imposed for felonies committed on or after November 1, 1989, a sentence that includes a term of incarceration also must include a term of post-prison supervision. ORS 137.010(10); OAR 213-005-0002(1).

durational departure from a presumptive prison term shall not total more than double the maximum duration of the presumptive prison term. In no case may the sentence exceed the statutory maximum indeterminate sentence described in ORS 161.605." Similarly, as pertinent here, OAR 213-005-0002(4) establishes that the total duration of a sentencing guidelines sentence—including both the term of incarceration and the term of post-prison supervision—

> "shall not exceed the statutory maximum indeterminate sentence for the crime of conviction. When the total duration of any sentence (prison incarceration and post-prison supervision) exceeds the statutory maximum indeterminate sentence described in ORS 161.605, the sentencing judge shall first reduce the duration of post-prison supervision to the extent necessary to conform the total sentence length to the statutory maximum."

Finally, as quoted in note 2, ORS 161.605 sets out maximum terms of imprisonment for each "class" of felony offense, as provided in the statutes setting out those offenses. *See also, e.g.*, ORS 163.165 (setting out the crime of assault in the third degree and providing that it is a Class C felony).[5]

We conclude that, consistent with the described statutes and rules—the latter of which, as noted, have the force of statutes—the maximum statutory incarceration term portion of a sentence imposed under the sentencing guidelines for a particular felony is the applicable statutory maximum for that felony as stated in ORS 161.605 and incorporated into the sentencing guidelines. In effect, the sentencing guidelines scheme establishes a range of incarceration sentences for a particular offense that consists of, not merely the presumptive sentence range set out in the grid block applicable to that offense based on crime seriousness and the defendant's criminal history, but, ultimately, the range

---

[5] By its terms, ORS 161.605 sets out the "maximum term of an *indeterminate* sentence of imprisonment" for the various classes of felonies. (Emphasis added.) Because sentencing guidelines sentences are determinate, we understand the cited rules to incorporate, not the reference in ORS 161.605 to indeterminate sentences, but the numerical limitations set out in subsections (1) through (4) of that statute, *see* note 2, for the purpose of establishing the maximum terms of *determinate* sentences.

established by the permissible upward and downward departures from the presumptive sentence, up to and including the maximum term for that "class" of felony as stated in ORS 161.605. It necessarily follows that imposition of a sentence within that range does not violate the Due Process Clause as applied in *Apprendi. See id.*, 147 L Ed 2d at 449 (consistent with due process, trial courts may "exercise discretion—taking into consideration various factors relating both to offense and offender—in imposing a [sentence] *within the range* prescribed by statute") (emphasis in original).[6]

Defendant nevertheless contends that the departure factor at issue in this case—that the offense was motivated in part by the victim's race or color—is qualitatively the same as the biased-motive sentence-enhancement factor applied in *Apprendi* and that, consistent with the Supreme Court's view of such a factor, it must be viewed as an element of the offense that must be pleaded and is subject to jury determination, regardless of whether the punishment based on it was within the statutory maximum for the underlying offense.

It is true that, in surveying its jurisprudence relating to sentence enhancements, the Court reiterated that, after *In re Winship*, 397 US 358, 90 S Ct 1068, 25 L Ed 2d 368 (1970),[7] and as was more recently foreshadowed in *Jones v. United States*, 526 US 227, 119 S Ct 1215, 143 L Ed 2d 311 (1999),[8] it is "clear beyond peradventure that * * * due process and associated jury protections extend, to some degree, to

---

[6] Defendant makes no argument regarding the effect, under *Apprendi*, of the post-prison supervision term of his sentencing guidelines sentence. As noted above, under OAR 213-005-0002(4), the total of an incarceration term and a term of post-prison supervision also "shall not exceed the statutory maximum indeterminate sentence for the crime of conviction."

[7] In *In re Winship*, the Supreme Court held that the constitutional safeguard, established in the Due Process Clause, that guilt of a criminal charge be determined beyond a reasonable doubt was applicable at the adjudicatory stage of a juvenile delinquency proceeding.

[8] As we also noted in *Crain*, in *Jones*, the Court considered whether the federal carjacking statute, 18 USC § 2119, "defined three distinct offenses or a single crime with a choice of three maximum penalties, two of them dependent on sentencing factors exempt from the requirements of charge and jury verdict." 143 L Ed 2d at 317. The Court noted that the second and third paragraphs of the statute not only provided for "steeply higher" penalties, but that the imposition of those penalties depended on "further facts (injury, death) that seem[ed] quite as important as the

determinations that go not to a defendant's guilt or inno-
cence, but simply to the length of his sentence." *Apprendi*,
147 L Ed 2d at 451 (citation, brackets, internal quotation
marks omitted). It is also true that, in *Apprendi*, the Court
characterized the biased-motive factor at issue in that case as
equivalent to an inquiry into the defendant's state of mind
and noted that state of mind (or criminal *mens rea*) is "per-
haps as close as one might hope to come to a core criminal
offense 'element'." *Id*. at 456-57. In regard to those principles,
however, the Court went on to explain that

> "it does not matter whether the required finding is charac-
> terized as one of intent or of motive, because labels do not
> afford an acceptable answer. That point applies as well to
> the constitutionally novel and elusive distinction between
> 'elements' and 'sentencing factors.' *Despite what appears to
> us the clear 'elemental' nature of the factor here, the relevant
> inquiry is one not of form, but of effect—does the required
> finding expose the defendant to a greater punishment than
> that authorized by the jury's guilty verdict?*

> "As the New Jersey Supreme Court itself understood in
> rejecting the argument that the required 'motive' finding
> was simply a 'traditional' sentencing factor, proof of motive
> [under New Jersey's criminal code] did not ordinarily
> increase the penal consequences to an actor. Indeed, the
> effect of New Jersey's [biased-motive] sentencing enhance-
> ment here is unquestionably to turn a second-degree
> offense into a first-degree offense, under the State's own
> criminal code. The [New Jersey statute] thus runs directly
> into our warning in *Mullaney* [*v. Wilbur*, 421 US 684, 95 S
> Ct 1881, 44 L Ed 2d 508 (1975)] that *Winship* is concerned
> as much with the category of [a] substantive offense as with
> the degree of criminal culpability assessed. This concern
> flows not only from the historical pedigree of the jury and
> burden rights, but also from the powerful interests those
> rights serve. The degree of criminal culpability the legisla-
> ture chooses to associate with particular, factually distinct
> conduct has significant implications both for a defendant's

elements in the principle paragraph (*e.g.*, force and violence, intimidation)." *Id.* at
319. The Court concluded that, in order to avoid constitutional concerns under the
Due Process Clause of the Fifth Amendment and the jury trial guarantee of the
Sixth Amendment, the "better reading" of the statute was that it established three
distinct offenses, the elements of each of which must be charged by indictment and
proved to a jury beyond a reasonable doubt. *Id.* at 317, 331.

very liberty, and for the heightened stigma associated with an offense the legislature has selected as worthy of greater punishment." *Apprendi*, 147 L Ed 2d at 457-58 (emphasis added; citations, some internal quotations omitted).

*See also id.* at 456 (noting that the New Jersey sentencing scheme permitted a jury to convict a defendant of a second-degree offense and then, "after a subsequent and separate proceeding," permitted a judge to impose punishment "identical" to that applicable to crimes of the first degree).[9]

■ Applying those principles here, it is apparent that, unlike *Apprendi*, this is not a case in which a conviction for an offense of a certain degree became subject, through application of a departure factor, to punishment commensurate with an offense of a higher degree. Rather, defendant was convicted of assault in the third degree—a Class C felony—and was sentenced to a term of imprisonment—36 months—that was well within the statutory maximum, as stated in ORS 161.605 and incorporated into the sentencing guidelines, for an offense of that class.

---

[9] *Mullaney v. Wilbur*, 421 US 684, 95 S Ct 1881, 44 L Ed 2d 508 (1975), cited by the Court in *Apprendi*, involved a Maine statute under which a defendant charged with murder whose defense was that he or she had instead committed manslaughter was required to establish, by a preponderance of the evidence, that he or she had acted in the heat of passion in committing the offense. *Mullaney*, 421 US at 691-92, 703. The Court held that assigning that burden to the defendant violated the requirement, under the Due Process Clause, that the state prove beyond a reasonable doubt every fact necessary to constitute the crime charged. *Id.* at 703. In reaching that conclusion, the Court explained that the criminal law of the various jurisdictions

"is concerned not only with guilt or innocence in the abstract but also with the degree of criminal culpability.

"* * * The fact remains that the consequences resulting from a verdict of murder, as compared with a verdict of manslaughter, differ significantly. * * *

"Moreover, if *Winship* were limited to those facts that constitute a crime as defined by state law, a State could undermine many of the interests that decision sought to protect without effecting any substantive change in its law. It would only be necessary to redefine the elements that constitute different crimes, characterizing them as factors that bear solely on the extent of punishment. * * *

"*Winship* is concerned with substance rather than this kind of formalism. The rationale of that case requires an analysis that looks to the operation and effect of the law as applied and enforced by the State, and to the interests of both the State and the defendant as affected by the allocation of the burden of proof." *Id.* at 697-99 (footnote and citations omitted).

Said another way, consistent with the Court's reasoning in *Apprendi*, the relevant inquiry is not whether the departure factor applied in imposing defendant's sentence properly is characterized as an "element" or a "sentencing factor." The relevant inquiry, instead, goes to the *effect* of applying that factor. Here, the jury determined that the state had proved, beyond a reasonable doubt, that defendant had committed the offense of assault in the third degree. The trial court then exercised its discretion to impose a departure sentence on defendant, based on the additional finding that his commission of the offense was motivated in part by the victim's color. The "effect" of that procedure was that defendant was exposed to a punishment that nevertheless remained within the range that was authorized, under the applicable legislative enactments, *by the jury's guilty verdict*—namely, the limitation, in ORS 161.605, of five years' imprisonment. That is all that *Apprendi,* or the earlier Supreme Court cases cited therein, requires.

In summary, after defendant pleaded guilty to assault in the third degree, the trial court imposed a departure sentence. The court's imposition of that sentence was supported by evidence in the record. In addition, the sentence was within the range established for that crime in the sentencing guidelines sentencing scheme; accordingly, imposition of the sentence pursuant to the procedure set out in that scheme did not violate defendant's rights under the Due Process Clause as elucidated and applied in *Apprendi*.

Affirmed.