Argued and submitted September 5, decision of the Court of Appeals and judgment of the circuit court affirmed December 18, 2003, vacated and remanded by United States Supreme Court June 28, 2004
See _____ US _____ , 124 S Ct 2906 (2004)

STATE OF OREGON,
*Respondent on Review,*

*v.*

RANDY EVERETT DILTS,
*Petitioner on Review.*

(99CR-0172; CA A106034; SC S49525)

82 P3d 593

Daniel M. Carroll, Deputy Public Defender, Salem, argued the cause and filed the brief for petitioner on review. With him on the brief was David E. Groom, Acting Executive Director, Office of Public Defense Services.

Daniel J. Casey, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

BALMER, J.

BALMER, J.

In this criminal case, we are asked to consider whether defendant's sentence was consistent with federal constitutional requirements as interpreted in *Apprendi v. New Jersey*, 530 US 466, 120 S Ct 2348, 147 L Ed 2d 435 (2000).

Defendant pleaded guilty to assault in the third degree. ORS 163.165. The trial court found that the crime was racially motivated and imposed an upward departure sentence under the Oregon Felony Sentencing Guidelines (sentencing guidelines). The trial court sentenced defendant to 36 months' imprisonment and an additional 36-month period of post-prison supervision. Defendant appealed from that sentence, and the Court of Appeals affirmed. *State v. Dilts*, 179 Or App 238, 39 P3d 276 (2002). Defendant sought review, arguing that the trial court violated his state and federal jury trial rights and his federal due process rights by imposing a departure sentence based on a fact not pleaded in the indictment or proved beyond a reasonable doubt.[1] We allowed review and, for the reasons stated below, now conclude that the trial court's imposition of an upward departure sentence did not violate defendant's federal constitutional rights under the Sixth and Fourteenth Amendments.[2]

## FACTS AND PROCEDURAL BACKGROUND

We take the undisputed facts from the Court of Appeals opinion and from the record. In January 1999, while

---

[1] In the Court of Appeals, defendant also challenged the departure sentence on evidentiary grounds. The Court of Appeals held that sufficient evidence in the record supported the trial court's factual finding that defendant's offense was motivated in part by the victim's race. *State v. Dilts*, 179 Or App 238, 242, 39 P3d 276 (2002). Defendant did not raise that issue in his petition for review, and we do not address it.

[2] The Sixth Amendment to the United States Constitution provides, in part: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury * * * and to be informed of the nature and cause of the accusation * * *." The Fourteenth Amendment to the United States Constitution provides, in part: "[N]or shall any state deprive any person of life, liberty, or property, without due process of law." The Sixth Amendment is made applicable to the states through the Due Process Clause of the Fourteenth Amendment. *Duncan v. Louisiana*, 391 US 145, 88 S Ct 1444, 20 L Ed 2d 491 (1968).

incarcerated in the Coos County Jail, defendant struck another inmate with a plastic toilet brush in the presence of a third inmate who was aiding defendant. The state charged defendant with assault in the third degree, a Class C felony, and defendant pleaded guilty to that charge. The parties did not negotiate a plea agreement, but did stipulate that defendant's criminal history and his current crime of conviction made him subject to a penalty range of between 15 and 18 months' imprisonment under the sentencing guidelines. The trial court accepted that stipulation.

Because defendant's sentence lies at the heart of this case and the trial court imposed that sentence under the sentencing guidelines, it is necessary first to explain how the sentencing guidelines operate. As this court has noted previously, the sentencing guidelines "serve as the primary means through which courts determine an offender's sentence for felony offenses." *State v. Ferman-Velasco*, 333 Or 422, 425, 41 P3d 404 (2002). In 1985, the legislature created the Oregon Criminal Justice Council (commission) to develop recommendations for criminal sentencing.[3] Or Laws 1985, ch 558, §§ 2-3. The commission's efforts produced a sentencing guidelines grid that calculates a defendant's sentence on the basis of two factors: the seriousness of the crime of conviction and the defendant's criminal history. This court has described the operation of the grid system as follows:

> "A 'Crime Seriousness Scale' serves as the vertical axis of the grid. Most felonies fall within one of the 11 categories on the Crime Seriousness Scale. A 'Criminal History Scale' serves as the horizontal axis of the grid. The Criminal History Scale is made up of nine categories, ranging from 'minor misdemeanor or no criminal record' to 'multiple (3+) felony person offender.' The appropriate sentence for a given felony conviction is determined by (1) locating the appropriate category for the crime of conviction on the Crime Seriousness Scale; (2) locating the appropriate category for the convicted offender on the Criminal History Scale; and (3) locating the grid block where the two categories intersect. Each grid block contains what is called a 'presumptive sentence' * * *."

---

[3] The Oregon Criminal Justice Council later was renamed the Oregon Criminal Justice Commission. Or Laws 1995, ch 420, § 1.

*State v. Davis*, 315 Or 484, 487, 847 P2d 834 (1993) (footnote omitted); *see also* OAR 213-004-0001 (describing operation of sentencing grid); OAR 213-003-0001(16) (defining "presumptive sentence" as "the sentence provided in a grid block * * * by the combined effect of the crime seriousness ranking of the current crime of conviction and the offender's criminal history").

■      The sentencing guidelines control the sentences for felonies committed after November 1, 1989. ORS 137.669. The commission created the guidelines as administrative rules, but, because the legislature approved them in 1989, they have the authority of statutory law. *State v. Langdon*, 330 Or 72, 74, 999 P2d 1127 (2000); Or Laws 1989, ch 790, § 87. Under the guidelines, a sentencing judge may impose a sentence that is an upward or downward departure from the presumptive sentence for a crime on finding "substantial and compelling reasons" that justify imposing such a departure. OAR 213-008-0001. *See also* OAR 213-003-0001(8) (defining "durational departure" as "a sentence which is inconsistent with the presumptive sentence as to term of incarceration * * *"). The rules provide a list of aggravating and mitigating factors that a sentencing judge may consider in determining whether substantial and compelling reasons exist to impose a departure sentence. OAR 213-008-0002. One such aggravating factor is that "[t]he offense was motivated entirely or in part by the race, color, religion, ethnicity, national origin or sexual orientation of the victim." OAR 213-008-0002(1)(b)(K). A judge may not impose a departure sentence that exceeds more than twice the maximum duration of the presumptive sentence or that exceeds the statutory maximum indeterminate sentence described in ORS 161.605. OAR 213-008-0003(2).

ORS 161.605 sets out the maximum indeterminate prison terms for Class A, B, and C felonies:

"The maximum term of an indeterminate sentence of imprisonment for a felony is as follows:

"(1)    For a Class A felony, 20 years.

"(2)    For a Class B felony, 10 years.

"(3)    For a Class C felony, 5 years.

"(4) For an unclassified felony as provided in the statute defining the crime."

As noted above, defendant pleaded guilty to assault in the third degree. ORS 163.165 is the substantive statute that defines that offense. That statute provides, in part:

"(1) A person commits the crime of assault in the third degree if the person:

"* * * * *

"(e) While being aided by another person actually present, intentionally or knowingly causes physical injury to another;

"* * * * *

"(2) Assault in the third degree is a Class C felony."

With that background in mind, we return to the facts of this case. As noted, defendant entered a guilty plea to third-degree assault, and the parties stipulated that the presumptive sentence for his crime under the sentencing guidelines was 15 to 18 months. At defendant's sentencing, the state argued that the trial court should impose an upward durational departure from that presumptive sentence, based on the aggravating factor that defendant's crime was motivated, at least in part, by the victim's race or color.[4] *See* OAR 213-008-0002(1)(b)(K). The prosecutor told the court that the victim had asserted that defendant had addressed him by use of a racial slur before the assault. The prosecutor also read into the record portions of a letter that defendant had written to a friend after the assault had occurred in which defendant had referred to the victim by use of a racial epithet. Defendant denied that the assault had been racially motivated, but did not deny that he had made the comment or had written the letter. However, he asserted that he had made the comments in question during the "heat of an argument" and in response to derogatory statements that the victim had made to him.

---

[4] The state also sought an upward durational departure based on defendant's use of the toilet brush as a weapon. However, because defense counsel objected and the sentencing judge apparently did not take the weapon into account in imposing an upward departure sentence on defendant, we do not consider that issue on review.

The trial court found that defendant's offense was motivated in part by the victim's race. Based on that aggravating factor, the trial court imposed an upward departure sentence of 36 months in prison and an additional 36-month period of post-prison supervision. That prison sentence constituted the maximum durational departure possible under the sentencing guidelines, or double the presumptive incarceration term of 15 to 18 months.[5]

## DEFENDANT'S FEDERAL CONSTITUTIONAL ARGUMENTS[6]

■ Defendant argues that, under the United States Supreme Court's decisions in *Apprendi* and *Ring v. Arizona*, 536 US 584, 122 S Ct 2428, 153 L Ed 2d 556 (2002), the Sixth and Fourteenth Amendments to the United States Constitution require that any factual aspect of a crime, other than a defendant's prior criminal convictions, that allows a sentencing judge to increase the penalty for that crime beyond the maximum sentence authorized by statute must be pled in the accusatory instrument and proved by the state beyond a reasonable doubt. Defendant contends that his sentence was increased above the statutory maximum on the basis of an aggravating fact found by the trial court—that his assault was racially motivated—that was not alleged in the indictment and that the state did not prove beyond a reasonable doubt. For those reasons, he argues, the sentence imposed on him violates his federal constitutional rights.[7]

---

[5] The sentence of 36 months' post-prison supervision contravened OAR 213-005-0002, which prohibits the imposition of prison and post-prison supervision terms that together total more than the statutory maximum indeterminate sentence described in ORS 161.605, which here was five years or 60 months. Defendant's combined prison and post-prison supervision sentence was 72 months. However, defendant conceded in the Court of Appeals that he did not preserve that issue, and he does not challenge his sentence on that ground in this court.

[6] The Court of Appeals declined to address defendant's state statutory and constitutional arguments because it found that he had referred to the statutes and constitutional provisions only "in passing" and had "failed to develop his arguments based on those provisions." 179 Or App at 243 n 1. We likewise elect not to address defendant's state arguments because he fails to develop them with sufficient particularity before this court.

[7] Defendant also asserts without elaboration that his sentence violated his rights under the Due Process Clause to be tried only for the crime charged and to have adequate notice of the severity of the penalty to be imposed, as well as his rights under the Due Process Clause and the Eighth Amendment to be sentenced

The state responds that defendant's sentence is both within the range that the sentencing guidelines authorize and is less than the five-year statutory maximum sentence applicable to Class C felonies under ORS 161.605(3). Under the state's interpretation of those administrative rules and statutes, defendant's sentence does not exceed the prescribed statutory maximum penalty. For that reason, the state asserts that the aggravating fact that led to the imposition of the departure sentence did not need to be alleged in the indictment or proved beyond a reasonable doubt and, therefore, defendant's sentence does not violate the Due Process Clause as interpreted in *Apprendi*. As we will explain in greater detail, we agree with the state and reject defendant's arguments to the contrary.

We begin with a discussion of *Apprendi*. In that case, the defendant fired several shots into the home of an African-American family who had moved into his previously all-white New Jersey neighborhood. After he confessed to the shooting, the defendant made a statement, which he later retracted, that he did not want that family in his neighborhood because they were "black in color." 530 US at 469. A grand jury returned a 23-count indictment charging the defendant with offenses that stemmed from a number of incidents, including the shooting. None of the counts referred to New Jersey's "hate crime" statute or alleged that the defendant had acted with a racially biased purpose. *Id.*

Pursuant to a plea agreement, the defendant pleaded guilty, *inter alia*, to second-degree possession of a firearm for an unlawful purpose on one of the charges, based on the shooting described above. *Id.* at 469-70. That offense carried a maximum sentence of 10 years under New Jersey law. *Id.* at 468. In the plea agreement, the state reserved the right to request the court to impose a higher "enhanced" sentence for that offense on the ground that the defendant had committed the crime with a "biased purpose" under the state's separate "hate crime" statute. *Id.* at 470. That statute authorized the court to extend the term of imprisonment for

---

fairly in a nonarbitrary and noncapricious manner. However, defendant does not develop those constitutional claims, and we therefore decline to address them. *See State v. McNeely*, 330 Or 457, 468, 8 P3d 212, *cert den*, 531 US 1055 (2000) (declining to address constitutional claims asserted but not developed).

second-degree offenses to "between 10 and 20 years" if the trial judge found by a preponderance of the evidence that the offender had acted with a purpose to intimidate because of the victim's race or color. *Id.* at 468. That 10- to 20-year sentencing range was identical to the sentencing range that New Jersey provided for crimes of the first degree. *Id.* at 491. In the plea agreement, the defendant had "reserved the right to challenge the hate crime sentence enhancement on the ground that it violate[ed] the United States Constitution." *Id.* at 470.

The sentencing judge held an evidentiary hearing on the issue of the defendant's "purpose" for the shooting and found by a preponderance of the evidence that he had committed his crime with a biased purpose. *Id.* at 470-71. Based on that finding, the judge held that the "hate crime enhancement" applied and sentenced the defendant to a 12-year term of imprisonment. *Id.* at 471.

The New Jersey appellate courts affirmed, and the United States Supreme Court granted *certiorari*. The defendant argued that the Due Process Clause required that the finding of bias that was the basis for his hate crime sentence had to be proved to a jury beyond a reasonable doubt under *In re Winship*, 397 US 358, 90 S Ct 1068, 25 L Ed 2d 368 (1970) (Due Process Clause of Fourteenth Amendment requires state to prove guilt beyond reasonable doubt in criminal cases). 530 US at 471. The Supreme Court agreed and vacated the sentence, holding that, because the trial court's finding of racial animus increased the penalty for the crime "beyond the prescribed statutory maximum" that the defendant would have been subject to without that finding, the question whether the defendant had committed the crime with a racially biased purpose had to "be submitted to a jury and proved beyond a reasonable doubt." *Id.* at 490. That procedure was required to satisfy the notice and jury trial guarantees of the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment. *Id.* at 476-77.

The Court stated that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."

*Id.* at 490. *Apprendi* extended to state criminal cases the rationale of the Court's earlier decision in *Jones v. United States*, 526 US 227, 119 S Ct 1215, 143 L Ed 2d 311 (1999), in which the Court had interpreted a federal criminal statute as establishing elements of distinct offenses to be proved to a jury beyond a reasonable doubt, rather than viewing those elements as sentencing factors for the trial judge.[8]

Although the Court in *Apprendi* emphasized that the Sixth and Fourteenth Amendments compelled its holding, and further emphasized that *"Winship*'s due process and associated jury protections extend, to some degree, 'to determinations that [go] not to a defendant's guilt or innocence, but simply to the length of his sentence[,]' " *id.* at 484 (quoting *Almendarez-Torres v. United States*, 523 US 224, 251, 118 S Ct 1219, 140 L Ed 2d 350 (1998) (Scalia, J., dissenting)), the Court also stated that judicial discretion and factfinding may continue to be exercised in sentencing, provided that doing so does not expose the defendant to a sentence that exceeds the prescribed statutory maximum penalty:

> "We should be clear that nothing in [the history of common-law felony sentencing] suggests that it is impermissible for judges to exercise discretion—taking into consideration various factors relating both to offense and offender—in

---

[8] In its opinion in this case, the Court of Appeals summarized *Jones* as follows:

"[I]n *Jones*, the Court considered whether the federal carjacking statute, 18 USC § 2119, 'defined three distinct offenses or a single crime with a choice of three maximum penalties, two of them dependent on sentencing factors exempt from the requirements of charge and jury verdict.' The Court noted that the second and third paragraphs of the statute not only provided for 'steeply higher' penalties, but that the imposition of those penalties depended on 'further facts (injury, death) that seem[ed] quite as important as the elements in the principle paragraph (*e.g.*, force and violence, intimidation).' The Court concluded that, in order to avoid constitutional concerns under the Due Process Clause of the Fifth Amendment and the jury trial guarantee of the Sixth Amendment, the 'better reading' of the statute was that it established three distinct offenses, the elements of each of which must be charged by indictment and proved to a jury beyond a reasonable doubt."

*Dilts*, 179 Or App at 249 n 8 (internal citations omitted). The Court in *Jones* noted that, "under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." 526 US at 243 n 6. The *Apprendi* Court held that "[t]he Fourteenth Amendment commands the same answer in this case involving a state statute." 530 US at 476.

imposing a judgment *within the range* prescribed by statute. We have often noted that judges in this country have long exercised discretion of this nature in imposing sentences *within statutory limits* in the individual case. * * * [O]ur periodic recognition of judges' broad discretion in sentencing * * * has been regularly accompanied by the qualification that that discretion was bound by the range of sentencing options prescribed by the legislature."

530 US at 481 (emphasis in original; internal citations omitted).

Since *Apprendi*, a majority of the Court has maintained that judicial factfinding and discretion in sentencing, within statutory sentence limits, can be exercised without violating constitutional jury trial or due process protections. In *Harris v. United States*, 536 US 545, 122 S Ct 2406, 153 L Ed 2d 524 (2002), for example, the Court upheld the constitutionality of federal mandatory minimum sentencing in light of *Apprendi*.[9] In a plurality opinion, Justice Kennedy, speaking for four members of the Court, stated:

"Judicial factfinding in the course of selecting a sentence within the authorized range does not implicate the indictment, jury-trial, and reasonable-doubt components of the Fifth and Sixth Amendments."

536 US at 558.[10] Thus, a plurality of the Court held that, during sentencing, a trial court may take into account traditional sentencing factors that the court has found by a preponderance of the evidence without violating the Sixth or Fourteenth Amendments as interpreted in *Apprendi*, provided

---

[9] In *Harris*, the Court reaffirmed its earlier decision in *McMillan v. Pennsylvania*, 477 US 79, 91 L Ed 2d 67, 106 S Ct 2411 (1986) (sustaining statute that increased minimum penalty for crime, though not beyond statutory maximum, when sentencing judge found, by preponderance of evidence, that defendant there had possessed firearm), in light of *Apprendi*.

[10] Justice Breyer, who did not join the quoted portion of the plurality opinion in *Harris*, but who concurred in the judgment, stated that a sentencing judge could exercise an even broader range of discretion when considering sentencing factors than did the plurality: "[T]he Sixth Amendment permits judges to apply sentencing factors—whether those factors lead to a sentence beyond the statutory maximum (as in *Apprendi*) or the application of a mandatory minimum (as here)." *Harris*, 536 US at 569 (Breyer, J., concurring in part and concurring in the judgment).

that the sentence imposed does not exceed the statutory maximum penalty that the legislature authorized for the defendant's crime of conviction. *See also id.* at 549 ("After the accused is convicted, the judge may impose a sentence within a range provided by statute, basing it on various facts relating to the defendant and the manner in which the offense was committed. Though these facts may have a substantial impact on the sentence, they are not elements [of a crime], and are thus not subject to the Constitution's indictment, jury, and proof requirements.").

Defendant's contention that his departure sentence is unconstitutional under *Apprendi* has some superficial appeal in light of the obvious factual similarities between the two cases. Both defendants decided to plead guilty rather than to exercise their right to a trial by jury. Like *Apprendi*, the trial court in defendant's case made a finding that defendant's crime was motivated in part by racial animus and exercised the court's authority to impose a longer sentence as a result of that finding than defendant otherwise would have received. However, as we shall explain, the crucial difference between the sentence that the defendant in *Apprendi* received and the sentence imposed on defendant is that defendant's sentence did not exceed the prescribed statutory maximum penalty for the offense to which he pleaded guilty, *i.e.*, third-degree assault. By contrast, as the Court in *Apprendi* emphasized, under New Jersey's hate crime statute, the defendant received not only a sentence that exceeded the prescribed statutory maximum penalty for the second-degree offense for which he was convicted, but that statute subjected him to a sentence that the state provided for crimes of the first degree. 530 US at 491.[11]

---

[11] Of the state appellate courts that have considered departure sentences under sentencing guidelines similar to those that Oregon employs, at least two have interpreted *Apprendi* as we do today and have upheld those departure sentences as constitutional. *See State v. Gore,* 143 Wn2d 288, 21 P2d 262 (Wash 2001); *State v. Blakely,* 111 Wn App 851, 47 P3d 149 (Wash App 2002) (following holding in *State v. Gore*), *rev den,* 148 Wn2d 1010, 62 P3d 889 (Wash 2003), *cert granted,* 124 S Ct 429, 157 L Ed 2d 309 (Oct 20, 2003); *Ashby v. State,* 2002 WL 977444 (Minn App 2002); *Jackson v. State,* 2002 WL 31835460 (Minn App 2002), *rev den* (Nov 18, 2003) (on post-conviction review). One state appellate court has diverged from that approach and concluded that the imposition of any departure sentence based on a fact not found beyond a reasonable doubt by a jury is inconsistent with *Apprendi. State v. Gould,* 271 Kan 394, 23 P3d 801 (2001).

Resolving whether defendant's sentence exceeds the prescribed statutory maximum penalty for the offense to which he pled guilty is a question of statutory interpretation.

■ Defendant argues that, as a matter of statutory interpretation, the upper end of the range of the presumptive sentence under the guidelines for a particular offense constitutes the prescribed statutory maximum penalty for purposes of applying *Apprendi*. Because the 36-month sentence that he received exceeded the 15- to 18-month presumptive sentence contained in the sentencing guidelines grid block, defendant alleges that his sentence was invalid. He asserts that the presumptive sentence is both mandatory and constitutes the statutory maximum sentence.

Defendant notes that, after November 1, 1989, courts must impose determinate sentences for felonies and that, in almost all cases, those sentences are to be determined by the sentencing guidelines. *See* ORS 137.669 (sentencing guidelines are mandatory and constitute presumptive sentences); ORS 137.010(1) (trial courts shall impose sentences in accordance with guidelines unless otherwise specifically provided by law); ORS 137.120(2) (same). Because the maximum prison terms for felony convictions set out in ORS 161.605 apply to only *indeterminate* sentences, not *determinate* sentences, defendant contends that those indeterminate maximums cannot be the maximum statutory limits for determinate sentences imposed under the sentencing guidelines for felonies committed after the guidelines' effective date.

In addition, defendant reasons that, because ORS 137.120(2) requires convicted felons to be sentenced under the guidelines, any relevant statutory maximum sentences for those crimes also must be located within the sentencing guidelines. Somewhat inconsistently, however, defendant rejects the notion that the maximum departure sentence constitutes the maximum statutory penalty, even though the sentencing guidelines themselves set out those departure sentences, *see, e.g.*, OAR 213-008-0001, and, as previously noted, those guidelines have the authority of statute. Instead, defendant insists that the statutory maximum sentence is the presumptive sentence.

To prevail under his proposed framework, defendant must demonstrate that, by making the sentences at the upper end of each grid block "presumptive," the legislature intended those sentences to be the maximum sentences that a court can impose in the absence of additional facts found by a jury or admitted by the defendant.

To ascertain the intent of the legislature, we begin by examining the text and context of the statutes and administrative rules at issue. As we discuss below, we conclude that neither the wording nor the structure of the sentencing guidelines or the related statutes support defendant's assertion that the legislature intended the presumptive sentences in the sentencing guidelines to constitute the statutory maximum sentences for the offenses to which they apply. Not only do the sentencing guidelines themselves authorize trial judges to impose sentences that depart from those presumptive sentences, but, in addition, the text of the related statutes demonstrates that the legislature did not intend to supplant the preexisting maximum indeterminate sentence lengths for felonies set out in ORS 161.605 when it enacted the guidelines.

We first consider the statute that provides that the sentencing guidelines "shall control the sentences" for all crimes committed after their effective date and that those sentences are "presumptive." ORS 137.669. That statute explicitly exempts durational departure sentences from that directive:

> "* * * *Except as provided in ORS * * * 137.671*, the incarcerative guidelines and any other guidelines so designated by the Oregon Criminal Justice Commission shall be mandatory and constitute presumptive sentences."

(Emphasis added.) ORS 137.671(1) grants a court the authority to

> "impose a sentence outside the presumptive sentence or sentence range made presumptive under ORS 137.669 for a specific offense if it finds there are substantial and compelling reasons justifying a deviation from the presumptive sentence."

The provision that excepts departure sentences from the presumptive sentences in the sentencing guidelines' grid is contained in the same statute on which defendant relies to assert that "presumptive" and "mandatory" are the functional equivalent of "maximum." Because a durational departure sentence can exceed the presumptive sentence for an offense, defendant's contention that the legislature intended the presumptive sentence to be the maximum sentence is untenable.

Moreover, the sentencing guidelines themselves provide for departure from the presumptive sentence. For example, the administrative rule that states the purposes and principles of the sentencing guidelines expressly reserves judicial discretion to deviate from presumptive punishments:

> "Sentencing guidelines are intended to forward the objectives described in section (1) [to punish each offender appropriately and to insure the security of the people in person and property within the limits of correctional resources] by defining presumptive punishments for felony convictions, *subject to judicial discretion to deviate for substantial and compelling reasons*; and presumptive punishments for post-prison or probation supervision violations, *again subject to deviation*."

OAR 213-002-0001(2) (emphasis added). Similarly, the administrative rule that requires judges to impose the presumptive sentence also grants them leeway to depart from it: "* * * [T]he sentencing judge shall impose the presumptive sentence provided by the guidelines unless the judge finds substantial and compelling reasons to impose a departure." OAR 213-008-0001.

Defendant's proposed interpretation would require us to conclude that the legislature structured a sentencing scheme that established the presumptive sentences as "maximums," above which a judge may not sentence a defendant unless based on facts found by a jury or admitted by the defendant, and yet also authorized judges to depart from those presumptive "maximums" and even provided factors on which to base such departures. See OAR 213-008-0002 (nonexclusive list of mitigating and aggravating departure factors). We do not agree with defendant's premise. Had the

legislature intended the presumptive sentences under the sentencing guidelines to be the maximum sentences, it would not have set out in such precise detail the many ways in which a judge may impose sentences that are greater (or less) than those presumptive sentences. The clear implication from the statutory sentencing scheme is that a departure sentence that is less than the statutory maximum penalty set out in ORS 161.605 for the particular class of felony involved does not exceed the "prescribed statutory maximum sentence," as that term is used in *Apprendi*, because the statutory maximum penalty itself exists outside of the presumptive sentence framework and, indeed, outside the sentencing guidelines themselves.

Defendant also is mistaken in his assertion that the presumptive sentences established under the guidelines for a particular offense are the "maximums" because those sentences are "mandatory." ORS 137.669 specifies that only the sentencing *guidelines*, not the presumptive sentences themselves, are mandatory: "Except as provided in ORS 137.637 and 137.671, the incarcerative guidelines * * * shall be mandatory *and* constitute presumptive sentences." (Emphasis added.) That the incarcerative guidelines "shall be mandatory" has a meaning independent of the adjoining concept that those guidelines also "constitute presumptive sentences." By making the sentencing guidelines "mandatory," we understand the legislature to have intended ORS 137.669 to require judges to use the guidelines in calculating what sentence to impose. However, two clear exceptions to the imposition of the presumptive sentence are listed in the statute. First, under ORS 137.637, if a statutory determinate sentence is longer than that authorized by the guidelines, then the statutory determinate sentence must be imposed.[12] Second, as discussed previously, ORS 137.671 authorizes a court to impose a departure sentence if it finds that substantial and compelling reasons justify a deviation from the presumptive sentence. The "presumptive sentences" in the

---

[12] ORS 137.637 provides:

"When a determinate sentence of imprisonment is required or authorized by statute, the sentence imposed shall be the determinate sentence or the sentence as provided by the rules of the Oregon Criminal Justice Commission, whichever is longer."

sentencing guidelines therefore are not "mandatory" when substantial and compelling reasons justify deviation from the presumptive sentence or when a determinate sentence of greater duration than that of the presumptive sentence is authorized or required by statute.

The legislature has established different classes of felonies and different sentencing maximums as penalties for those crimes. *See* ORS 161.605. The sentencing guidelines serve to control the sentencing judge's discretion, and they do so in concert with the limits of the maximum indeterminate sentences in ORS 161.605. As defendant himself described, those indeterminate lengths for prison terms operate as the absolute outer boundaries for sentences imposed pursuant to the guidelines, and they therefore constitute the "prescribed statutory maximum sentences" for purposes of *Apprendi*.

The explicit incorporation of the ORS 161.605 indeterminate sentences throughout the sentencing guidelines and related statutes further indicates that the legislature considered those sentences to be the statutory maximums, even after it had adopted the guidelines. For example, as noted earlier, OAR 213-008-0003(2) provides, in part:

> "* * * In no case may the [durational departure] sentence exceed the statutory maximum indeterminate sentence described in ORS 161.605."

Similarly, OAR 213-005-0002(4) provides that post-prison supervision and incarceration time may not exceed "the statutory maximum indeterminate sentence for the crime of conviction * * * described in ORS 161.605," and directs sentencing judges to reduce post-prison supervision as necessary to "conform the total sentence length to the statutory maximum." The latter reference is particularly noteworthy, because, there, the legislature did not identify the statutory maximum set out by ORS 161.605 as the indeterminate maximum; rather, the legislature referred to it simply as "the statutory maximum." Such phrasing strongly suggests that the legislature established only one maximum—the indeterminate sentence limit for felonies set by ORS 161.605—and that that was not superseded by the presumptive sentences in the sentencing guidelines.[13]

_____

[13] We also think it significant that the legislature used the term "maximum" to describe only the sentence lengths in ORS 161.605 and not those in ORS 137.669

Even if we agreed with defendant that the pre-scribed statutory maximum must be located within the sentencing guidelines themselves for crimes committed after November 1, 1989, we still would find his sentence to be constitutionally acceptable, because it accords with the durational departure restrictions that the guidelines set. As discussed above, OAR 213-008-0003(2) limits durational departures to not more than double the maximum presumptive prison term.[14] Defendant's 36-month prison sentence was double the maximum 18-month presumptive prison term for his felony conviction and therefore falls within the boundaries that the sentencing guidelines set.[15]

■ Thus, we agree with the state and with the Court of Appeals that, under the sentencing guidelines, a convicted felon faces the possibility of a sentence not merely within the

---

(making guidelines mandatory and guideline sentences presumptive). As noted above, ORS 161.605 provides that the "maximum" term of imprisonment for a Class C felony—such as third-degree assault—is five years. It is difficult to escape the conclusion that five years' imprisonment is the "prescribed statutory maximum" sentence for the crime to which defendant pleaded guilty. *See State v. Adams*, 315 Or 359, 365, 847 P2d 397 (1993) (court regarded as significant fact that legislature used different wording in related portion of sentencing guidelines statute); *In the Matter of Perlenfein and Perlenfein*, 316 Or 16, 22-23, 848 P2d 604 (1993) (when legislature or agency uses particular term in one provision of statute or regulation, but omits that term in parallel and related provision, court infers that legislature did not intend term to apply in provision from which it is omitted).

[14] OAR 213-008-0003(2) provides, in part:

"A durational departure from a presumptive prison term shall not total more than double the maximum duration of the presumptive prison term. * * *"

[15] In some instances, the sentence limits in ORS 161.605 will not affect a departure sentence imposed on a defendant because, as in this case, twice the maximum prescribed sentence for the defendant's offense will be less than the maximum statutory indeterminate sentence set out in ORS 161.605 for that class of felony. *See* OAR 213-008-0003(2) (limiting durational departure sentences to no more than double maximum duration of presumptive prison term and not to exceed statutory maximum indeterminate sentence in ORS 161.605). However, the maximum statutory indeterminate sentence *is* the sentence when the maximum possible departure sentence is greater than the maximum indeterminate sentence for the offense of conviction. For example, the crime of sexual abuse in the second degree, ORS 163.425, is a Class C felony; therefore, under ORS 161.605(3), the maximum statutory sentence that a court can impose on a defendant convicted of that offense is five years or 60 months. However, under the sentencing guidelines, the criminal history of a defendant convicted of second-degree sexual abuse could warrant a presumptive sentence of between 31 and 36 months. A trial court seeking to impose the maximum departure sentence on such a defendant would be unable to impose twice the presumptive sentence—between 62 and 72 months—because that sentence would exceed the 60-month limit on Class C felonies in ORS 161.605(3).

presumptive sentence range set out in the grid block applicable to that offense, but within the range established by the permissible upward and downward departures from the presumptive sentence, up to and including the maximum term for that class of felony as established in ORS 161.605. That is true whether the defendant's conviction is based on a jury verdict or a guilty plea. We hold that ORS 161.605 establishes the maximum penalty authorized by the legislature and that defendant's sentence did not exceed that prescribed statutory maximum. His sentence, therefore, is constitutional under *Apprendi*.

Defendant also argues that his sentence is unconstitutional under *Ring v. Arizona*. In his view, *Ring* holds that, if an offender's crime of conviction carries a maximum sentence that may be imposed only if certain additional findings are made, then, under *Apprendi*, a court may use those findings as grounds to impose that maximum sentence only if a jury made those findings of fact beyond a reasonable doubt, the offender admitted them in pleading to the indictment, or the findings were based on the fact of a prior conviction.

We reject defendant's contention that *Ring* renders defendant's sentence unconstitutional. *Ring* was a death-penalty case in which the state's capital sentencing scheme required a judge to make certain findings of fact in a special evidentiary hearing in order for a defendant to be eligible for a death sentence. The maximum penalty that could be authorized by a jury's guilty verdict, therefore, was life imprisonment. 536 US at 597. The Supreme Court held that such a scheme violated the Sixth Amendment in light of the reasoning in *Apprendi*. The Court held that "Arizona's enumerated aggravating factors operate as 'the functional equivalent of an element of a greater offense,' " *i.e.*, capital murder, and therefore that the Sixth Amendment required such factors to be found by a jury. *Id.* at 609 (quoting *Apprendi*, 530 US at 494 n 19). In *Apprendi*, the Court similarly had noted that the judge's finding of fact in that case exposed the defendant, who had pled guilty to a second-degree offense, to a penalty range commensurate to that imposed for first-degree offenses. *Apprendi*, 530 US at 491. In contrast, defendant here pled guilty to a Class C felony and, as our foregoing discussion explains, received a sentence below the statutorily

authorized maximum punishment—found in ORS 161.605—for an offense of that class.

Moreover, the same day that *Ring* was decided, the Court also decided *Harris*, discussed above, in which a majority of the Court indicated that the role of judicial discretion and factfinding in sentencing may continue to be exercised in a meaningful way, provided that that exercise does not lead to the imposition of a sentence outside of the statutory limits in an individual case. *Harris*, 536 US at 558 (plurality opinion); *id.* at 569 (Breyer, J., concurring in part and concurring in judgment). Although we perceive some degree of analytical tension between *Apprendi*, *Ring*, and *Harris*, we conclude that our holding here is not inconsistent with any of them.

■ In addition to claiming that his sentence contravened the Sixth and Fourteenth Amendments, defendant contends that his indictment violated those same provisions because it did not allege specifically a fact upon which the legislature has conditioned an increase in the prescribed statutory maximum sentence. Defendant asserts that, under *Apprendi* and *Ring*, the substantial and compelling grounds that provide the basis for a judge to impose a departure sentence are actually elements of an enhanced crime rather than sentencing factors and therefore must be alleged in the indictment and proved by the state beyond a reasonable doubt unless defendant waives or admits to them. According to defendant, because the indictment in his case failed to allege that his crime was racially motivated, and that fact, found by the judge, provided the substantial and compelling reason on which the judge imposed a departure sentence, defendant's indictment was constitutionally defective. Because, as discussed above, we have held that defendant's sentence was not enhanced above the statutory maximum sentence, defendant cannot maintain that the judicially found fact of racial motivation is one that increased the maximum statutory penalty to which he was subject. We therefore reject defendant's argument that his indictment was constitutionally defective.

As defendant acknowledges in his brief, this court rejected his argument previously in *State v. Terry*, 333 Or 163, 188-89, 37 P3d 157 (2001). The defendant in that case

was sentenced to death after the jury found that he "deliberately" had caused the death of the victim. The defendant contended that, because the jury had to find the element of "deliberateness" to make him eligible for the death penalty, *Apprendi* required that that element be alleged in the indictment. *Id.* at 184-85. This court held that, because the statutory scheme for the crime of aggravated murder made the prescribed maximum statutory penalty a sentence of death, such a sentence was not a penalty enhancement under *Apprendi* and, therefore, the state was not required to allege deliberateness in the indictment. *Id.* at 188-89.

In *State v. Oatney*, 335 Or 276, 66 P3d 475 (2003), this court revisited the holding in *Terry* after the Supreme Court's decision in *Ring v. Arizona*[16] and concluded that "*Ring* does not require revision of this court's analysis of *Apprendi* that is set out in *State v. Terry*." 335 Or at 297 (holding that "deliberateness" was not element of capital aggravated murder that had to be charged in indictment). Although defendant insists that the holding in *Terry* must be reconsidered in light of *Ring*, he articulates no reason why the analysis in *Oatney* was incomplete.

Although juries made the determination that exposed the defendants in *Terry* and *Oatney* to the increased penalty,[17] whereas defendant here was sentenced based on his guilty plea and the findings of the court, those cases nevertheless provide guidance here. The "enhanced penalty" in *Terry* and *Oatney* was the death penalty. This court held that, because the indictments charged the defendants in those cases with aggravated murder, and the possible penalties for aggravated murder were life in prison with the possibility of parole, life in prison without the possibility of parole, and the death penalty, the prescribed "maximum statutory penalty" was death. Thus, neither case was inconsistent with *Apprendi*. *See Terry*, 333 Or at 188-89; *Oatney*,

---

[16] In *Ring*, the Supreme Court held that the Sixth Amendment requires that the aggravating factors necessary for the imposition of the death penalty must be found by a jury because they operate as the functional equivalent of an element of a greater offense.

[17] The juries in *Terry* and *Oatney*, by finding the defendants guilty of aggravated murder in the guilt phase of their capital trials, made the defendants eligible for the death penalty. ORS 163.105(1)(a); ORS 163.150(1)(a).

335 Or at 296-97. As explained below, the same analysis applies to defendant's arguments that his indictment was constitutionally defective.

Defendant was indicted for and pleaded guilty to a Class C felony, assault in the third degree. That guilty plea exposed defendant to the possibility that he would receive any sentence up to the statutory maximum that ORS 161.605 sets. Defendant's sentence fits squarely within that limitation: The 36-month term of incarceration that he received was less than the five-year statutory maximum sentence that ORS 161.605 prescribes for a Class C felony.[18] Thus, even though the trial court's finding that defendant's crime was racially motivated justified a departure from the presumptive sentence to which defendant was subject, that finding did not increase the sentence beyond the maximum penalty that the legislature authorized. For that reason, like the statutory aggravating factor of "deliberateness" in the aggravated murder cases of *Terry* and *Oatney*, defendant's racial animus in committing the assault did not have to be alleged in the indictment, because that fact did not lead to an increase in the prescribed statutory maximum punishment.

## CONCLUSION

For the reasons set out above, we hold that ORS 161.605 establishes the prescribed statutory maximum sentence for defendant's crime. Because defendant's sentence did not exceed that maximum, neither that sentence nor his indictment deprived him of any of his rights under the federal constitution.[19]

[18] Moreover, as previously discussed, defendant's sentence was also within the sentencing guidelines' internal check on durational departures, limiting departure sentences to no more than double the presumptive sentence for the crime of conviction. His 36-month sentence was exactly double the 18-month presumptive sentence for the grid block in which his crime seriousness and criminal history placed him.

[19] We express no opinion as to what result we would reach in a challenge to a sentence that *exceeds* the sentencing guidelines maximum for durational departures but is *within* the prescribed statutory maximum sentence set by ORS 161.605. We note only that such a sentence would not present an *Apprendi* problem, because it would be within the authorized sentencing range, and that would present a different issue from the one before us here.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.