Argued and submitted September 17, 2003, sentences vacated; cases remanded for resentencing; otherwise affirmed September 8, 2004

# STATE OF OREGON,
*Respondent,*

*v.*

# SYLVIA MARIE SAWATZKY,
*Appellant.*

0003-32189, 0009-37299; A116857 (Control), A117424
(Cases Consolidated)

96 P3d 1288

Jesse Wm. Barton argued the cause and filed the brief for appellant.

Rolf C. Moan, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy

Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Haselton, Presiding Judge, and Linder and Wollheim, Judges.

HASELTON, P. J.

**HASELTON, P. J.**

Defendant appeals, challenging upward departure sentences imposed in two cases that are consolidated for appeal, Case Nos. A116857 and A117424. Defendant's sentences, some of which are concurrent and some of which are consecutive, add up to a total period of incarceration of 88 months. Defendant makes three principal arguments: First, the trial court erred in relying on "abuse of trust" as a sentencing factor to support certain departure sentences in A116857. Second, with respect to both cases, under principles articulated in *Apprendi v. New Jersey*, 530 US 466, 120 S Ct 2348, 147 L Ed 2d 435 (2000), and *Blakely v. Washington*, ____ US ____ , 124 S Ct 2531, 159 L Ed 2d 403 (2004), the trial court could not impose upward departure sentences because the enhancement factors on which it relied were not based on the facts to which defendant pleaded guilty. Third, and again with respect to both cases, under the reasoning of *State v. Quinn*, 290 Or 383, 623 P2d 630 (1981), and *State v. Wedge*, 293 Or 598, 652 P2d 773 (1982), reliance on certain upward departure factors pursuant to the sentencing guidelines violated Article I, section 11, of the Oregon Constitution. As discussed below, we agree with defendant that the upward departure sentences violate the Sixth Amendment to the United States Constitution under the rationale set forth in *Blakely*. We therefore affirm defendant's convictions but remand for resentencing in both cases.

The material facts are as follows: In A116857, defendant was charged in a 20-count indictment with nine counts of aggravated first-degree theft, ORS 164.057 (odd-numbered Counts 1 through 17); one count of first-degree theft, ORS 164.055 (Count 19); and ten counts of first-degree forgery, ORS 165.013 (even-numbered Counts 2 through 20). All of those charges against defendant arose out of her embezzlement of more than half a million dollars over several years in the course of her employment as a bookkeeper, causing serious financial hardship to her elderly employers. In A117424, defendant was charged by separate indictment with one count of failure to appear in the first degree, ORS 162.205. Defendant pleaded guilty to all charges and submitted separate plea petitions in the two cases, and the court imposed

sentences for the two cases in the same sentencing hearing. As described in detail below, the court ultimately imposed upward departure sentences with respect to Counts 9 through 18 in A116857 and also imposed an upward departure sentence in A117424. *See generally* OAR 213-008-0002(1)(b) (providing a nonexclusive list of aggravating factors that may serve as bases for departure sentences).

Because the parties disagree over which factors the trial court invoked in imposing the departure sentences in A116857, as well as the extent to which the court identified any single factor as being independently sufficient to support departure, we recount the pertinent circumstances in some detail. In that regard, we note that each of the aggravated first-degree theft counts on which the court departed (Counts 9, 11, 13, 15, and 17) was paired with a corresponding first-degree forgery count (Counts 10, 12, 14, 16, and 18) concerning essentially the same conduct during the same period of time. The parties and the court treated each of those pairs of crimes together, and the court's departure findings pertained to each aggravated theft/forgery pair, rather than to individual counts.

As to the first aggravated theft/forgery pair at issue on appeal (Counts 9 and 10), the sentencing court stated, "I will note an abuse of trust as to each count." The court then moved on to the second aggravated theft/forgery pair (Counts 11 and 12), stating, "Reason for the departure is the abuse of trust." The prosecutor pointed out that the amount involved for Counts 11 and 12 was $103,557, and the court responded, "All right. So as to those two counts, harm greater than typical would be a second reason for the departure. *Second and independent reason.*" (Emphasis added.)

The court then moved on to the third aggravated theft/forgery pair (Counts 13 and 14), stating that it was imposing a departure sentence: "Again, reason is abuse of trust." The prosecutor then noted that the amount involved was $44,847, and the court responded, "All right. Make that a second [g]round." The clerk asked, "So those two are abuse of trust and harm greater " and the court responded, "Right."

The court then moved on to the fourth pair (Counts 15 and 16), stating that "abuse of trust is one reason to depart

upward." The prosecutor then noted that the amount involved was $42,000, and the court responded, "All right. So, again, the second reason will be harm greater than typical."

As to the final aggravated theft/forgery pair (Counts 17 and 18), the court stated as a departure reason "abuse of trust," then asked how much money was involved. The prosecutor responded $34,166, and the sentencing court then added, "Harm greater than typical."

The court then addressed the sentence in A117424. On the sole charge of failure to appear, the court imposed an upward departure sentence based on an aggravating factor of "evident intent to flee prosecution and, therefore, to avoid responsibility."

Finally, the sentencing court added:

> "And I'm going to note for the record, globally, additional reasons to depart and impose consecutive sentences in the entire case are that the offense as far as the state knows involved at least 680 transactions. The duration was three to three and a half years. She was on release at the time. She violated conditions of her release in Oregon and the overall of our—and now, I'm talking about both financial and non-financial harm to the victims is substantial and much greater than usual."[1]

After sentencing, defendant moved for reconsideration of the sentences, arguing that the court's reliance on an "abuse of trust" factor was erroneous and further arguing that imposition of upward departure sentences based on facts that had not been pleaded and proved at trial violated both the state and the federal constitutions. The sentencing court considered the merits of defendant's arguments but adhered to its original sentencing decision.

Thereafter, the court entered a written "judgment of conviction and sentence" in A116857. Specifically, for Counts 9 and 10, that judgment identified "abuse of trust" as the sole basis for departure; with respect to Counts 11 through 18, the judgment identified "abuse of trust and harm inflicted is

---

[1] The record indicates that defendant was on release at the time of the failure-to-appear offense, but there is no indication that she was on release at the time of the other offenses.

greater than usual" as the bases for departure. In A117424, the judgment identified "reasons * * * stated on the record" and "flee[ing] prosecution" as the bases for departure on the failure-to-appear charge.

With the stage so set, we turn to defendant's arguments. As explained below, we conclude that, under *Blakely*, the court's imposition of upward departure sentences in each of the consolidated cases was erroneous. Accordingly, we remand for resentencing in both cases. ORS 138.222(5).[2]

At the outset, we explain why we reach defendant's federal constitutional arguments without following our customary practice of addressing nonconstitutional and state constitutional arguments first. In her nonconstitutional and state constitutional assignments of error, defendant challenges the use of several specific departure factors. In response to those constitutional challenges to the use of those departure factors, the state contends that the court's reliance on other upward departure factors not challenged by defendant on appeal are independently sufficient to support the departure sentences imposed. *See generally State v. Williams*, 131 Or App 85, 883 P2d 918 (1994), *adhered to on recons*, 133 Or App 191, 891 P2d 3, *rev den*, 321 Or 512 (1995) (discussing circumstances in which sentencing court's findings of independent grounds for departure are sufficient to support conclusion that court would have imposed the same departure sentence based on a single factor alone). Thus, to address defendant's nonconstitutional and state constitutional arguments, we would need to carefully analyze each departure factor used in these cases and determine whether the trial court's findings were of sufficient clarity to allow us to determine that the court would have imposed departure

---

[2] ORS 138.222(5) provides:

"The appellate court may reverse or affirm the sentence. If the court concludes that the trial court's factual findings are not supported by evidence in the record or do not establish substantial and compelling reasons for a departure, it shall remand *the case* to the trial court for resentencing. If the appellate court determines that the sentencing court, in imposing a sentence in the case, committed an error that requires resentencing, the appellate court shall remand *the entire case* for resentencing. The sentencing court may impose a new sentence *for any conviction in the remanded case*."

(Emphasis added.)

sentences based on a single factor rather than on the combination of several factors. Defendant's federal constitutional challenge, on the other hand, is global: Defendant contends that, under *Blakely*, the upward departure provisions of the Oregon sentencing guidelines, which are based on facts found by a judge rather than facts found by a jury or to which the defendant has pleaded, are unconstitutional. Under these circumstances, we deem it appropriate to first address defendant's federal constitutional facial challenge to the sentencing guidelines.

In *Apprendi*, the Court stated:

> "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt. With that exception, we endorse the statement of the rule set forth in the concurring opinions in [*Jones v. United States*, 526 US 227, 252-53, 119 S Ct 1215, 143 L Ed 2d 311 (1999) (Stevens, J., concurring)]: '[I]t is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. It is equally clear that such facts must be established by proof beyond a reasonable doubt.' "

530 US at 490. Defendant contends that, under the sentencing guidelines, an offender's presumptive term of imprisonment is the "prescribed statutory maximum," as that term is used in *Apprendi*. Therefore, defendant argues, any fact that is used to impose an upward departure above the presumptive term of imprisonment must be found by a jury beyond a reasonable doubt. In *State v. Dilts*, 336 Or 158, 82 P3d 593 (2003), the Oregon Supreme Court rejected an identical argument. However, the United States Supreme Court recently vacated and remanded *Dilts* for reconsideration in light of *Blakely*. *Dilts v. Oregon*, ___ US ___ , 124 S Ct 2906, 159 L Ed 2d 809 (2004). Defendant asserts, in a supplemental memorandum of authority, that the sentence enhancement scheme found unconstitutional in *Blakely* is essentially identical to the Oregon sentencing guidelines' scheme for upward departure sentences. As explained below, we agree.

Oregon's sentencing guidelines scheme is composed of a grid with one axis relating to an offender's criminal history and the second axis relating to the seriousness of the crime for which the offender is being sentenced. By matching an offender's criminal history with the severity of the current crime, the sentencing court arrives at a particular grid block that shows the presumptive sentence for that specific offender for that specific crime. For example, an offender with four prior nonperson felony convictions has a criminal history score of E. If that offender commits the crime of unlawful use of a weapon, which has a crime severity rating of 6, the court looks to grid block 6E to determine the proper presumptive sentence, which is 10 to 12 months. OAR 213-002-0001(3)(d) explains:

> "Subject to the discretion of the sentencing judge to deviate and impose a different sentence in recognition of aggravating and mitigating circumstances, the appropriate punishment for a felony conviction should depend on the seriousness of the crime of conviction when compared to all other crimes and the offender's criminal history."

The sentencing court generally must impose the guidelines' presumptive sentence, but it may impose either an upward or downward departure sentence rather than the presumptive sentence if the court, in the course of the sentencing proceeding, "finds substantial and compelling reasons to impose a departure." OAR 213-008-0001. *See also* ORS 137.671. The nonexclusive list of upward departure factors includes, for example, that the crime involved "[d]eliberate cruelty to victim," that there was a "threat of or actual violence toward a witness or victim," that the offense "involved a violation of public trust or professional responsibility," that the offense "was part of an organized criminal operation," and that the offense was motived "by the race, color, religion, ethnicity, national origin or sexual orientation of the victim." OAR 213-008-0002(1)(b). An upward departure sentence "shall not total more than double the maximum duration of the presumptive prison term. In no case may the sentence exceed the statutory maximum indeterminate sentence described in ORS 161.605." OAR 213-008-0003(2). *See generally* ORS 137.080 (sentencing court considers aggravating and mitigating circumstances in accordance with sentencing guidelines provisions).

The sentencing court's factual findings of "substantial and compelling reasons" in support of a departure sentence are not based on facts found by a jury, *see State v. Mack*, 108 Or App 643, 646, 817 P2d 1321 (1991) (the defendant was not entitled to present evidence of mitigating factors to jury), and are not necessarily even based on evidence presented to a jury. *See* ORS 137.090 (sentencing court may consider evidence received during the proceeding, a presentence report, and "[a]ny other evidence relevant to aggravation or mitigation that the court finds trustworthy and reliable"); *State v. Balkin*, 134 Or App 240, 242, 895 P2d 311, *rev den*, 321 Or 397 (1995) (sentencing court may rely on prosecutor's statements in support of departure if it finds them to be reliable). Moreover, the sentencing court may not, in imposing a departure sentence, rely on any "factual aspect of a crime [that] is a statutory element of the crime"—*viz.*, facts that necessarily are found by a jury or admitted by a defendant in a plea—unless "the criminal conduct constituting that aspect of the current crime of conviction is significantly different from the usual criminal conduct captured by the aspect of the crime." OAR 312-008-0002(2).

To summarize, under Oregon's sentencing guidelines scheme, the presumptive sentence for a felony is based on the elements of the crime itself and the offender's criminal history. The sentencing court "shall" impose the presumptive sentence unless it imposes a departure sentence based on *judicial* findings of "substantial and compelling reasons" for departure which are not based on, or dependent on, the jury's findings.

In *Blakely*, the Court considered the constitutionality under the Sixth Amendment to the United States Constitution of a similar sentencing scheme. There, the defendant pleaded guilty and was convicted of second-degree kidnapping under Washington' law. *Blakely*, 124 S Ct at 2534. Under the Washington sentencing guidelines, the crime to which the defendant pleaded guilty had a "standard range" sentence of 49 to 53 months for an offender with the defendant's criminal history. *Id.* at 2535. Under the Washington guidelines, a sentencing court may impose an "exceptional sentence," or a sentence outside the standard range, if the court finds "substantial and compelling reasons justifying an

exceptional sentence." *Id.* (quoting *former* Revised Code of Washington (RCW) § 9.94A.120(2) (recodified at RCW § 9.94A.535)). The Washington statute contains a nonexclusive list of aggravating factors in support of exceptional sentences that is similar to that found in the Oregon sentencing guidelines. *Blakely*, 124 S Ct at 2535, citing *former* RCW § 9.94A.390 (recodified at RCW § 9.94A.535). In *Blakely*, the sentencing court imposed an exceptional sentence of 90 months, based on its finding that the defendant had acted with deliberate cruelty. *Blakely*, 124 S Ct at 2535.

The defendant in *Blakely* appealed, and the Washington courts upheld his conviction and sentence on the ground that the sentence was within the statutory maximum indeterminate sentence allowable for the crime of conviction. *State v. Blakely*, 111 Wash App 851, 870-71, 47 P3d 149 (2002), *rev den*, 148 Wash 2d 1010 (2003). The United States Supreme Court granted certiorari and reversed. *Blakely*, 124 S Ct at 2536, 2543.

The court reiterated its holding from *Apprendi* that facts, other than prior convictions, that increase the penalty for a crime beyond the "statutory maximum" must be found by a jury beyond a reasonable doubt. *Id.* at 2536. Concerning the Washington court's rationale that the relevant "statutory maximum" was the statutory indeterminate sentence for the crime, the Court stated:

> "In this case, petitioner was sentenced to more than three years above the 53-month statutory maximum of the standard range because he had acted with 'deliberate cruelty.' The facts supporting that finding were neither admitted by petitioner nor found by a jury. The State nevertheless contends that there was no *Apprendi* violation because the relevant 'statutory maximum' is not 53 months, but the 10-year maximum for class B felonies in [RCW] § 9A.20.021(1)(b). It observes that no exceptional sentence may exceed that limit. *See* [*former* RCW] § 9.94A.420 [now codified at RCW § 9.94A.850]. Our precedents make clear, however, that the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant. See Ring,* [536 US 584, 602, 122 S Ct 2428, 153 L Ed 2d 556 (2002)] ('the maximum he would

receive if punished according to the facts reflected in the jury verdict alone' (quoting *Apprendi, supra,* at 483)); *Harris v. United States,* 536 US 545, 563, [122 S Ct 2406, 153 L Ed 2d 524] (2002) (plurality opinion) (same); *cf. Apprendi, supra,* at 488 (facts admitted by the defendant). In other words, the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts 'which the law makes essential to the punishment,' Bishop, [*Criminal Procedure*, § 87, at 55 (2d ed 1872)], and the judge exceeds his proper authority.

"The judge in this case could not have imposed the exceptional 90-month sentence solely on the basis of the facts admitted in the guilty plea. Those facts alone were insufficient because, as the Washington Supreme Court has explained, '[a] reason offered to justify an exceptional sentence can be considered only if it takes into account factors other than those which are used in computing the standard range sentence for the offense,' [*State v.*] *Gore*, 143 Wash 2d [288,] 315-16, [21 P3d 262 (2001)], which in this case included the elements of second-degree kidnaping and the use of a firearm * * *. The 'maximum sentence' is no more 10 years here than it was 20 years in *Apprendi* (because that is what the judge could have imposed upon finding a hate crime) or death in *Ring* (because that is what the judge could have imposed upon finding an aggravator)."

*Blakely*, 124 S Ct at 2537-38 (emphasis in original; footnote omitted). Thus, the Court concluded that Washington's sentencing procedure did not comply with the Sixth Amendment and that the defendant's sentence therefore was unconstitutional. *Id.*

In *Dilts*, the Oregon Supreme Court upheld a departure sentence under the Oregon sentencing guidelines against an *Apprendi*-based challenge, following a rationale quite similar to that followed by the Washington courts in upholding Washington's "exceptional sentence" scheme. In *Dilts*, the defendant argued that the guidelines presumptive sentence was the relevant "statutory maximum" penalty for purposes of Sixth Amendment analysis under *Apprendi*. The court treated the question as one of statutory construction,

basing its analysis on whether the legislature intended the guidelines presumptive sentence to be the "statutory maximum" penalty. The court stated:

> "To prevail under his proposed framework, defendant must demonstrate that, by making the sentences at the upper end of each grid block 'presumptive,' the legislature intended those sentences to be the maximum sentences that a court can impose in the absence of additional facts found by a jury or admitted by the defendant."

*Dilts*, 336 Or at 171. The court then examined the text and context of the Oregon sentencing guidelines and reached the obvious conclusion that the legislature did not, in fact, intend that presumptive guidelines sentences would be the maximum that could be imposed in the absence of facts found by a jury or admitted by the defendant. *Id.* at 172-73. It concluded that, "[h]ad the legislature intended the presumptive sentences under the sentencing guidelines to be the maximum sentences, it would not have set out in such precise detail the many ways in which a judge may impose sentences that are greater (or less) than those presumptive sentences." *Id.* The court then concluded that, because guidelines sentences up to the statutory maximum indeterminate sentences listed in ORS 161.605 are authorized by the sentencing guidelines, ORS 161.605 provides the relevant "statutory maximum" for *Apprendi* purposes. *See id.* at 174 ("the legislature established only one maximum—the indeterminate sentence limit for felonies set by ORS 161.605").

*Blakely* makes it clear, however, that Sixth Amendment analysis under *Apprendi* is not dependent on legislative intent. That is, the Court did not view as relevant that the Washington legislature, in enacting the sentencing guidelines, *intended* that courts rather than juries would act as finders of facts that justify "exceptional sentences," even though the Washington guidelines, like the Oregon guidelines, leave no doubt that that was the legislative intent. The Court, in fact, rejected the notion that legislative labeling of "elements" to be found by a jury and "sentencing factors" to be found by a judge could provide the necessary distinction required by the Sixth Amendment:

"Those who would reject *Apprendi* are resigned to one of two alternatives. The first is that the jury need only find whatever facts the legislature chooses to label elements of the crime, and that those it labels sentencing factors—no matter how much they may increase the punishment—may be found by the judge. This would mean, for example, that a judge could sentence a man for committing murder even if the jury convicted him only of illegally possessing the firearm used to commit it—or of making an illegal lane change while fleeing the death scene. Not even *Apprendi*'s critics would advocate this absurd result. *Cf.* 530 US at 552-53 (O'Connor, J., dissenting). The jury could not function as a circuitbreaker in the State's machinery of justice if it were relegated to making a determination that the defendant at some point did something wrong, a mere preliminary to a judicial inquisition into the facts of the crime the State *actually* seeks to punish.

"The second alternative is that legislatures may establish legally essential sentencing factors *within limits*—limits crossed when, perhaps, the sentencing factor is a 'tail which wags the dog of the substantive offense.' *McMillan* [*v. Pennsylvania*, 477 US 79, 88, 106 S Ct 2411, 91 L Ed 2d 67 (1986)]. What this means in operation is that the law must not go *too far*—it must not exceed the judicial estimation of the proper role of the judge.

"The subjectivity of this standard is obvious. Petitioner argued below that second-degree kidnaping with deliberate cruelty was essentially the same as first-degree kidnaping, the very charge he had avoided by pleading to a lesser offense. The court conceded this might be so but held it irrelevant. *See* 111 Wash App at 869. Petitioner's 90-month sentence exceeded the 53-month standard maximum by almost 70%; the Washington Supreme Court in other cases has upheld exceptional sentences 15 times the standard maximum. * * * Did the court go *too far* in any of these cases? There is no answer that legal analysis can provide. With *too far* as the yardstick, it is always possible to disagree with such judgments and never to refute them."

*Blakely*, 124 S Ct at 2539-40 (emphasis in original; footnotes and citations omitted). In light of the Court's statements in *Blakely*, it is apparent that the rationale underlying *Dilts* was incorrect. The Court has made clear in *Blakely* that a "statutory maximum" sentence for purposes of the Sixth

Amendment is not something that, by mere legislative directive, can encompass a sentence enhancement that is based solely on judicial factfinding.

■■    We conclude, consistently with *Blakely*, that the relevant "prescribed statutory maximum" under the Oregon sentencing guidelines is the presumptive sentence that the court determines based on the offender's criminal history and crime seriousness score. Guidelines departure sentences, which require judicial findings of fact and are not, under the current scheme, based on facts found by the jury, do not comport with the Sixth Amendment to the United States Constitution.

Sentences vacated; cases remanded for resentencing; otherwise affirmed.