Argued and submitted September 21, conviction affirmed; sentence vacated;
remanded for resentencing December 8, 2004, petition for review allowed
May 24, 2005 (338 Or 583)

STATE OF OREGON,
*Respondent,*

*v.*

THOMAS J. GORNICK,
*Appellant.*

02C53376; A121042

102 P3d 734

Monica L. Finch, Deputy Public Defender, argued the cause for appellant. With her on the brief were Peter A. Ozanne, Executive Director, and Peter Gartlan, Chief Defender, Office of Public Defense Services.

Jonathan H. Fussner, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Landau, Presiding Judge, and Brewer, Chief Judge, and Armstrong, Judge.

BREWER, C. J.

## BREWER, C. J.

Defendant pleaded guilty to assault in the third degree. ORS 163.165. After accepting defendant's guilty plea, the trial court found several aggravating factors that it deemed to be substantial and compelling reasons to impose an upward durational departure sentence.[1] Defendant appeals, arguing that, under *Blakely v. Washington*, 542 US ____ , 124 S Ct 2531, 159 L Ed 2d 403 (2004), the trial court lacked authority to impose a departure sentence based on facts that were neither admitted to by defendant nor pleaded in the indictment, submitted to a jury, and proved beyond a reasonable doubt. Defendant concedes that he failed to preserve his argument at the sentencing hearing, but he argues that the error is apparent on the face of the record and that we should exercise our discretion to correct it. We agree and remand for resentencing.

Defendant was indicted for third-degree assault after spitting at a staff member at MacLaren Youth Correctional Facility, where defendant was incarcerated. He filed a petition to enter a guilty plea in the trial court. The petition included the following statements:

"I am the defendant in the above case and I wish to plead Guilty to the crime(s) of Assault 3. * * *

"I have read and reviewed the charging instrument in this case with my attorney and I understand that, unless I plead 'guilty' or 'no contest' to this crime, the State must prove beyond a reasonable doubt that I did each of the things charged against me in the charging instrument in order to convict me of this crime.

"My lawyer has explained to me, and I understand, that I have the following rights:

---

[1] OAR 213-008-0001 provides, in part:

"[T]he sentencing judge shall impose the presumptive sentence provided by the guidelines unless the judge finds substantial and compelling reasons to impose a departure. If the sentencing judge departs from the presumptive sentence, the judge shall state on the record at the time of sentencing the substantial and compelling reasons for the departure."

"1) I have a <u>right</u> against self-incrimination, which is my right not to admit that I committed this crime even if I did it, and not to say anything about the crime.

"2) I am presumed to be innocent of this crime, and I have a <u>right</u> to have the charge against me dismissed unless the State of Oregon proved, beyond a reasonable doubt, that I committed the crime.

"3) I have a <u>right</u> to a public trial by jury without delay, in which the jury, not the Judge, will decide whether or not the evidence proves beyond a reasonable doubt that I am guilty of this crime.

"* * * * *

"My lawyer has explained to me, and I understand, that by voluntarily pleading 'guilty' or 'no contest' to this crime, I will be giving up each of these rights, and I will immediately be convicted of this crime without a trial. By pleading 'guilty,' I am admitting that the State's evidence proves beyond a reasonable doubt that I committed this crime. * * *.

"* * * * *

"* * * My lawyer also has explained to me, and I understand, that the sentence I receive for this crime is entirely up to the Court. Therefore, even if the District Attorney has agreed to recommend a certain sentence in return for my plea to this crime, the Court does not have to accept the District Attorney's recommendation, and the Court can impose a different sentence which the Court finds is appropriate[.]"

(Underscoring in original.) According to defendant's presentence investigation report (PSI), "defendant advised that he pleaded guilty at the advice of counsel, and also because he wanted to 'get it over with.'"

Defendant's presumptive sentence under the sentencing guidelines grid was 13 to 14 months. At sentencing, the court addressed defendant:

"[B]ased upon the PSI, * * * I think you are appropriate for departure. According to the PSI, you've been resistive to treatment, you've been sanctioned on other occasions, and at this point I don't think it was a spitting incident. Yes, it was a spitting incident which included throwing a chair through a window and breaking it and lots of inappropriate

statements and behavior, and when you put all that together and the fact that you've been at MacLaren for a while, I think it's appropriate to depart. I understand that counsel may differ, but it concerns me that they're not making progress. And for that reason I'm going to depart to 26 months, followed by two years post-prison supervision."

None of the factors mentioned by the court had been alleged in the indictment or admitted by defendant when he entered his plea.

As noted, on appeal, defendant argues that the trial court lacked authority to impose a departure sentence based on facts that he did not admit and that the state did not plead in the indictment and prove to a jury beyond a reasonable doubt. Defendant relies on the United States Supreme Court's decision in *Blakely*, which we discuss below. Because the Court decided *Blakely* after defendant was sentenced, we first describe the law as it existed when defendant was sentenced and explain its development into its current state.

Had defendant raised at trial the issue that he now advances on appeal, its resolution would have been controlled by our decision in *State v. Dilts*, 179 Or App 238, 39 P3d 276 (2002) (*Dilts I*), aff'd, 336 Or 158, 82 P3d 593 (2003) (*Dilts II*), vac'd and rem'd, ___ US ___ , 124 S Ct 2906, 159 L Ed 2d 809 (2004). In *Dilts I*, the defendant pleaded guilty to third-degree assault. The sentencing court found aggravating factors and imposed an upward departure sentence. The defendant objected, citing *Apprendi v. New Jersey*, 530 US 466, 490, 120 S Ct 2348, 147 L Ed 2d 435 (2000), in which the United States Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." The defendant in *Dilts I* asserted that the presumptive guidelines sentence was the "prescribed statutory maximum" for purposes of *Apprendi*. He argued that, because the aggravating factors resulted in a sentence that exceeded the maximum presumptive sentence, they must have been either admitted as part of his guilty plea or found by a jury beyond a reasonable doubt before they could be the basis for an enhanced sentence. We concluded that the "prescribed statutory maximum" was not the presumptive sentence but was

the maximum permissible upward departure, subject to the limits set out in ORS 161.605.[2] *Dilts I*, 179 Or App at 248-49. Because the defendant's departure sentence was well within the maximum established by ORS 161.605, we held that it did not violate the *Apprendi* rule. *Id*.

After defendant in this case was sentenced, the Oregon Supreme Court affirmed our decision in *Dilts I*, and the United States Supreme Court granted *certiorari*. While that case was pending, the Court issued its opinion in *Blakely*. In *Blakely*, the Court considered the constitutionality of Washington's sentencing scheme. Washington law prescribed sentences within a standard range but permitted deviation if the sentencing court found " 'substantial and compelling reasons justifying an exceptional sentence.' " 542 US at ____ , 124 S Ct at 2535 (quoting Wash Rev Code Ann § 9.94A.120(2)). An "exceptional sentence" could not exceed limits provided in Washington Revised Code Annotated, section 9A.20.021. *Blakely*, 542 US at ____ , 124 S Ct at 2537. The sentencing court in *Blakely* imposed an exceptional sentence after finding that the defendant had acted with "deliberate cruelty." *Id*. Before the Supreme Court, the State of Washington's argument was consistent with our reasoning in *Dilts I*: It argued that the upper limit on exceptional sentences, not the maximum within the "standard range," established the relevant statutory maximum. *Id*. The Court rejected that argument, stating that

"the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*. In other words, the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he [or she] may impose *without* any additional findings."

---

[2] OAR 213-008-0003(2) provides, "A durational departure from a presumptive prison term shall not total more than double the maximum duration of the presumptive prison term. In no case may the sentence exceed the statutory maximum indeterminate sentence described in ORS 161.605." ORS 161.605 establishes the upper limit of indeterminate sentences.

*Id.* (citations omitted; emphasis in original). Because Washington's sentencing scheme permitted the enhancement of sentences beyond the statutory maximum based on facts not admitted to by the defendant or found by a jury, the Court held that the procedure violated the defendant's right to a jury trial.[3] *Id.*

The Court thereafter vacated and remanded *Dilts* for reconsideration in light of *Blakely*. 542 US ___ , 124 S Ct 2906, 159 L Ed 2d 809 (2004). We recently acknowledged in *State v. Sawatzky*, 195 Or App 159, 165, 96 P3d 1288 (2004), that, with respect to upward departure sentences, Oregon's sentencing guidelines rules are essentially identical to Washington's "exceptional sentence" law. We concluded that "departure sentences, which require judicial findings of fact and are not, under the current scheme, based on facts found by the jury, do not comport with the Sixth Amendment to the United States Constitution." *Id.* at 172. With that in mind, we turn to the parties' arguments in this case.

As noted, defendant argues that the trial court lacked authority to impose a departure sentence based on facts that he did not admit and that the state did not plead in the indictment or prove to a jury beyond a reasonable doubt. He concedes that he raises that argument for the first time on appeal but asserts that the error is reviewable as one that is apparent on the face of the record. The state responds first that neither *Blakely* nor *Apprendi* requires that aggravating factors be pleaded in the indictment.[4] The state argues that, at the very least, the issue is not so free from doubt as to qualify for plain-error review. With respect to the standard of proof, the state contends that the face of the record does not

---

[3] The Sixth Amendment to the United States Constitution provides, in part, "In all criminal proceedings, the accused shall enjoy the right to a speedy and public trial, by an impartial jury * * *." The federal jury trial right applies to state trials under the Fourteenth Amendment. *Duncan v. Louisiana*, 391 US 145, 148-49, 88 S Ct 1444, 20 L Ed 2d 491 (1968).

[4] Throughout this opinion, we use the term "aggravating factors" to refer to facts that support a sentence that exceeds the maximum presumptive sentence. *Cf. Apprendi*, 530 US at 494 n 19 (characterizing "sentencing factor" as "a circumstance * * * that supports a specific sentence *within the range* authorized by the jury's finding that the defendant is guilty of a particular offense" (emphasis in original)).

indicate that the trial court did not find the aggravating factors beyond a reasonable doubt. Finally, the state notes that the right to a jury trial is waivable and that defendant's guilty plea constituted a waiver of his right to have a jury determine the aggravating factors.[5]

■      Several legal principles guide our analysis. First, we have discretion to consider an unpreserved error of law that is "apparent on the face of the record." *State v. Brown*, 310 Or 347, 355, 800 P2d 259 (1990). An error is "apparent" if it is obvious and not reasonably in dispute. *Id.* It appears "on the face of the record" if we "need not go outside the record or choose between competing inferences to find it, and the facts that comprise the error are irrefutable." *Id.* Second, error is determined "by reference to the law existing as of the time of the appellate decision." *State v. Jury*, 185 Or App 132, 139, 57 P3d 970 (2002), *rev den*, 335 Or 504 (2003). Accordingly, we consider whether *Blakely* compels a different result from that reached by the trial court even though the Supreme Court had not yet decided *Blakely* at the time of defendant's sentencing. Third, if we exercise our discretion to review an apparent error, we must articulate our reasons for doing so. *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382, 823 P2d 956 (1991).

■      We begin with defendant's argument that the trial court could not sentence him based on facts that were not pleaded in the indictment. Defendant argues that, under *Apprendi*, the failure to plead aggravating factors in the indictment is an error of law. The state responds that the

---

[5] The state also argues that defendant's claim is beyond the scope of this court's review. *See* ORS 138.050(1) (providing that a defendant who has pleaded guilty may appeal only upon showing that the disposition exceeds the maximum allowable by law or is constitutionally cruel and unusual). Although defendant frames his argument, in part, in terms of the state's failure to plead and properly prove the aggravating factors, his appeal must be viewed in light of the relief that he requests. He does not argue that his conviction is invalid. He argues that his sentence exceeds the maximum authorized for his conviction. *Cf. State v. Ferrell*, 315 Or 213, 224, 843 P2d 939 (1992) (holding that, where a defect in the indictment "does not affect the validity of the conviction on any properly alleged underlying offense, the appropriate remedy is to affirm the conviction on the underlying offense and to remand for resentencing"). Defendant's argument is within the scope of our review. *See* ORS 138.222(4)(a) (providing that appellate courts may review a claim that the sentencing court "failed to comply with requirements of law in imposing or failing to impose a sentence").

asserted error is not apparent because neither *Apprendi* nor *Blakely* held that aggravating factors must be pleaded in the indictment.[6]

We agree with the state. Neither *Apprendi* nor any of the United States Supreme Court cases that have followed it held that aggravating factors must be pleaded in the indictment. In *Apprendi,* the Court specifically noted that the indictment question was not before it. 530 US at 477 n 3 ("Apprendi has not here asserted a constitutional claim based on the omission of [the aggravating factor] in the indictment. * * * We thus do not address the indictment question separately today."); *see also Blakely,* 542 US at ____ , 124 S Ct at 2538 (ruling on Sixth Amendment grounds); *Ring v. Arizona,* 536 US 584, 609, 122 S Ct 2428, 153 L Ed 556 (2002) (same).

Moreover, the Oregon Supreme Court has rejected the argument that *Apprendi* requires the state to plead aggravating factors in the indictment. In *State v. Oatney,* 335 Or 276, 66 P3d 475 (2003), *cert den,* 540 US 1151, 124 S Ct 1148 (2004), the defendant was convicted of aggravated murder. The jury found beyond a reasonable doubt that he had acted with deliberateness, so the trial court sentenced him to death.[7] The Supreme Court rejected his argument on appeal

---

[6] The state contends that the indictment issue is controlled by the Oregon Supreme Court's decision in *Dilts II,* in which the court rejected the defendant's argument that his sentence was invalid because the aggravating factor on which it was based was not pleaded in the indictment. 336 Or at 177. The state's assertion is questionable at best. The court stated in *Dilts II* that the aggravating factor "did not have to be alleged in the indictment, because that fact did not lead to an increase in the prescribed statutory maximum punishment." *Id.* at 179. To the extent that the court's holding rested on that reasoning, in light of *Blakely,* it appears to be unsupported. *See Sawatzky,* 195 Or App at 171 ("In light of the Court's statements in *Blakely,* it is apparent that the rationale underlying *Dilts* [*I* and *II*] was incorrect."). Given that the Supreme Court reached the same conclusion on different grounds in *State v. Oatney,* 335 Or 276, 66 P3d 475 (2003), *cert den,* 540 US 1151, 124 S Ct 1148 (2004), as we discuss below, we need not determine whether we are, nevertheless, bound by *Dilts II.*

[7] ORS 163.150(1)(b)(A) provides that, upon a finding that the defendant is guilty of aggravated murder, the trial court must submit to the jury, among other things, whether the defendant caused the death deliberately. ORS 163.150(1)(d) provides that the state must prove the issue beyond a reasonable doubt. ORS 163.150(1)(f) provides that, "[i]f the jury returns an affirmative finding on each issue considered under paragraph (b) of this subsection, the trial judge shall sentence the defendant to death."

that the state had not pleaded "deliberateness" in the indictment. *Id.* at 296 ("*Ring* does not require that 'deliberateness' be charged specifically in the indictment before the question of deliberateness can be submitted to a jury."). Nothing in *Blakely* requires a different result in this case. Because defendant advances no other basis for his assertion that the indictment must include the aggravating factors, we conclude that there is no error apparent on the face of the record, and we do not consider the argument further.

We turn to defendant's argument that the state was required, and failed, to prove the aggravating factors beyond a reasonable doubt. The state again contends that the asserted error is not apparent on the face of the record. In the state's view, the fact that the trial court found "substantial and compelling" reasons to impose a departure sentence does not preclude the possibility that the court found that the state proved the aggravating factors beyond a reasonable doubt. Although that is true, there likewise is no indication in the record that the trial court applied the "proof beyond a reasonable doubt" standard. *See Apprendi,* 530 US at 476 (stating that the Due Process Clause of the Fourteenth Amendment requires that aggravating factors be proved beyond a reasonable doubt); *see also State v. Caravity,* 105 Or App 410, 411, 804 P2d 522 (1991) (finding plain error where trial court applied preponderance standard rather than reasonable doubt standard). We need not determine whether the court plainly erred in that regard, though, because, as we now explain, the case must be remanded for resentencing for a different reason.

We turn to defendant's contention that his sentence is invalid because the aggravating facts were determined by the court rather than by a jury. The state again argues that the asserted error is not obvious because, to conclude that the trial court erred, we would have to choose between competing inferences. The state acknowledges that, under *Blakely,* the Sixth Amendment guarantees the right of defendants to have a jury determine facts used to enhance a sentence beyond the presumptive maximum, but it notes that defendants are free to waive the right.[8] The state argues that the facts here are

---

[8] The state raises a separate argument with respect to the effect of defendant's guilty plea. It argues that, because defendant asserts that the aggravating factors

susceptible of two reasonable, albeit opposite, inferences: (1) that defendant was not aware of the right to jury determination of departure factors and therefore could not knowingly have waived the right, and (2) that defendant understood the full scope of the Sixth Amendment jury trial right and knowingly waived it. According to the state, defendant simply may have decided that he would rather take his chances at sentencing before a judge than a jury. The state asserts,

> "Whether defendant's decision not to demand to be sentenced by a jury was a knowing and voluntary tactical decision is a matter for a post-conviction proceeding, in which an adequate record can be made. That record does not exist now, and this court would be shooting in the dark if it were to assume, without any basis in the record, that defendant was unaware of his jury-sentencing option (and that he would have asserted it if he had known about it)."

We do not agree with the state that the second inference that it asserts can permissibly be drawn from the record. Appellate courts will not presume a valid waiver of fundamental constitutional rights from a silent record. *Boykin v. Alabama*, 395 US 238, 243, 89 S Ct 1709, 23 L Ed 2d 274 (1969) ("We cannot presume a waiver of [the privilege against compulsory self-incrimination, the right to trial by jury, and the right to confront one's accusers] from a silent record."). In particular, waiver of the right to jury trial requires "the *express* and intelligent consent of the defendant." *Patton v. United States*, 281 US 276, 312, 50 S Ct 253, 74 L Ed 854 (1930), *abrogated on other grounds by Williams v. Florida*, 399 US 78, 90 S Ct 1893, 26 L Ed 2d 446 (1970) (emphasis added).

■ The state correctly notes that defendant entered a guilty plea, which ordinarily constitutes a waiver of the right to a jury trial. *Brady v. United States*, 397 US 742, 748, 90 S Ct 1463, 25 L Ed 2d 747 (1970). However, it does not follow

---

should have been included in the indictment, we should impute to defendant—at the time that he pleaded guilty—the knowledge that the crime with which he was charged included the aggravating factors. The state contends further that, because a guilty plea ordinarily is an admission of all elements pleaded in the indictment, we should assume that defendant meant to admit to the aggravating factors. We reject that argument without discussion.

from the fact that defendant waived the right to have a jury determine some of the requisite facts that he necessarily waived the jury right entirely. *Compare id.* (stating that, because a defendant who pleads guilty "stands as a witness against himself," a guilty plea constitutes a waiver of the Fifth Amendment privilege against self-incrimination) *with Mitchell v. United States*, 526 US 314, 316, 119 S Ct 1307, 143 L Ed 2d 424 (1999) (holding that a defendant who pleads guilty retains the Fifth Amendment right to remain silent at a sentencing proceeding). To be valid, a waiver must be "an *intentional* relinquishment or abandonment of a *known* right or privilege." *Johnson v. Zerbst*, 304 US 458, 464, 58 S Ct 1019, 82 L Ed 1461 (1938) (emphasis added). For defendant's guilty plea to have constituted a valid waiver of the right to have a jury determine the aggravating factors, the record must show that he intended for his plea to extend to the aggravating factors. In other words, we will not assume that defendant waived the right to have a jury determine the aggravating factors unless the record shows that he knew, first, that he had the right to have a jury determine the aggravating factors and, second, that, by pleading guilty, he was waiving that right.[9]

██ ██ Defendant's plea petition stated that he understood that he was charged with committing third-degree assault. The petition then enumerated defendant's procedural rights together with statements that defendant understood that he had those rights and that, by pleading guilty, he was waiving them:

> "I understand that, unless I plead 'guilty' or 'no contest' to this crime, the State must prove beyond a reasonable doubt that I did *each of the things charged against me in the charging instrument in order to convict me of this crime.*
>
> "* * * * *
>
> "3) [I understand that] I have a right to a public trial by jury without delay, in which the jury, not the Judge, will decide whether or not the evidence proves beyond a reasonable doubt that I am guilty of *this crime.*
>
> "* * * * *

---

[9] In that regard, it is significant that *Blakely*, itself, involved a guilty plea.

"* * * I understand, that by voluntarily pleading 'guilty' or 'no contest' to this crime, I will be giving up each of these rights, and I will immediately be convicted of this crime without a trial."

(Underscoring in original; other emphasis added.) In his plea petition, defendant waived the right to have a jury determine whether the evidence proved the elements of third-degree assault. There is no basis in the record for the inference that defendant intentionally waived the right to jury determination of the aggravating factors. It follows that, because the trial court imposed a departure sentence based on facts that defendant did not admit and that the court did not submit to a jury, the sentence is unlawful. *Sawatzky*, 195 Or App at 172. The imposition of an unlawful sentence is an error of law. *State v. Skelton*, 153 Or App 580, 593, 957 P2d 585, *rev den*, 327 Or 448 (1998). We also conclude that the error is apparent on the face of the record.

That conclusion does not end our inquiry. As noted, we must determine whether to exercise our discretion to correct the error and, if we do, articulate the reasons for so doing.

"[I]n deciding whether to exercise its discretion to consider an error of law apparent on the face of the record, among the factors that a court may consider are: the competing interests of the parties; the nature of the case; the gravity of the error; the ends of justice in the particular case; how the error came to the court's attention; and whether the policies behind the general rule requiring preservation of error have been served in the case in another way, *i.e.*, whether the trial court was, in some manner, presented with both sides of the issue and given an opportunity to correct any error. Those factors do not comprise a necessary or complete checklist; they merely are some of the permissible considerations."

*Ailes*, 312 Or at 382 n 6 (citations omitted).

Defendant argues that we should exercise our discretion to correct the error because the state has no legitimate interest in requiring a person to serve an illegal sentence, whereas his interest in avoiding an illegal sentence is manifest. The state does not argue that we should decline to

exercise our discretion. It concedes that, if defendant did not waive the right to jury trial, the trial court violated *Blakely* in imposing a departure sentence. Instead, the state asks that we consider the appropriate remedy for a *Blakely* violation.

We accept the state's concession and conclude that it is appropriate to exercise our discretion to correct the sentencing error. We give little weight to the last consideration cited in *Ailes*—whether the policies underlying the preservation rule have otherwise been served. Defendant's failure to present the issue to the trial court and to give the court an opportunity to correct the error is excusable under the circumstances. Had defendant raised the objections that he now advances on appeal, the trial court properly would have rejected his challenge under *Dilts*. "[B]ecause the outcome at trial would not have been altered even with preservation, our allowance of relief in this case will not subvert the comity considerations that underlie the preservation requirement." *Jury*, 185 Or App at 140.

On the other hand, we give considerable weight to the competing interests of the parties, the gravity of the error, and the ends of justice. As defendant notes, the state has no legitimate interest in requiring him to serve an unlawful sentence. Conversely, defendant has a significant liberty interest at stake. The maximum presumptive sentence to which defendant lawfully could have been subjected was 14 months; his departure sentence is nearly double that, 26 months. We conclude that the error is grave and that the ends of justice are best served by vacating defendant's sentence.

We end our analysis with a discussion of the appropriate further remedy. The state advances four alternative solutions for us to consider, one of which would not require us to remand this case for resentencing; the state acknowledges that each of the others would. The state first argues that we should construe the sentencing guidelines in a way that renders them constitutional by severing the language that makes the presumptive sentence mandatory and that requires factual findings as a basis for departing from

presumptive sentences.[10] The state contends that severing that language would permit discretionary departure sentences, which would be consistent with *Blakely*. Second, the state argues alternatively that we should sever the language that requires courts, rather than juries, to find departure factors. The state also suggests third and fourth options if we do not sever any of the statutory language and instead hold the guidelines to be unconstitutional: hold only that upward departure sentences based on factors found by courts rather than juries are unconstitutional, thereby requiring imposition of presumptive sentences, or declare the sentencing guidelines as a whole to be unconstitutional, thereby reverting to the preguidelines system of entirely discretionary sentencing.

We begin with the state's first suggested alternative. OAR 213-008-0001 provides that

> "the sentencing judge *shall* impose the presumptive sentence provided by the guidelines unless the judge finds substantial and compelling reasons to impose a departure. If the sentencing judge departs from the presumptive sentence, the judge *shall* state on the record at the time of sentencing the substantial and compelling reasons for the departure."

(Emphasis added.) The state asserts that, by severing the first sentence from that provision, we can render presumptive sentences discretionary rather than mandatory.

We disagree. Even read in isolation, the second sentence in OAR 213-008-0001 requires trial courts to find substantial and compelling reasons before departing from presumptive sentences. It provides that the court *shall* state the

---

[10] ORS 174.040 provides:

"It shall be considered that it is the legislative intent, in the enactment of any statute, that if any part of the statute is held unconstitutional, the remaining parts shall remain in force unless:

"(1) The statute provides otherwise;

"(2) The remaining parts are so essentially and inseparably connected with and dependent upon the unconstitutional part that it is apparent that the remaining parts would not have been enacted without the unconstitutional part; or

"(3) The remaining parts, standing alone, are incomplete and incapable of being executed in accordance with the legislative intent."

reasons if it departs from the presumptive sentence. It follows that a court could not impose a departure sentence without substantial and compelling reasons. In other words, if there were no substantial and compelling reasons to depart, the presumptive sentence still would be mandatory. *Blakely* commands that the facts supporting the imposition of a departure sentence be found by a jury.

At any rate, we conclude that eliminating all mandatory terminology would not leave the remaining part of the sentencing guidelines capable "of being executed in accordance with the legislative intent." ORS 174.040(3). The state argues that, in *Dilts II*, the Supreme Court analyzed the intent underlying the sentencing guidelines and rejected the argument that the legislature intended for presumptive sentences to be the maximum sentences that a court can authorize in the absence of additional facts found by a jury or admitted by the defendant. That argument misses the point. At issue here is not the maximum sentence that can be imposed without additional *jury* findings (or defense admissions), but the maximum sentence that can be imposed with *no* additional findings. The state's proposal to sever the mandatory language from the sentencing guidelines would authorize departure sentences in the absence of any aggravating factors. The Supreme Court did not hold in *Dilts II* that the legislature intended such a result. As the state itself notes, "the court held that the legislature intended precisely what is prohibited by *Blakely*: that a departure from the presumptive sentence *must be supported by substantial and compelling reasons based on factual determinations* made post-verdict by the judge, not by the jury." (Emphasis added.) *See Dilts II*, 336 Or at 173-74 ("The 'presumptive sentences' in the sentencing guidelines therefore are not 'mandatory' when substantial and compelling reasons justify deviation * * *.").

Furthermore, part of the legislature's intent in enacting the guidelines was to promote uniformity in the statewide sentencing system. *State v. Miller*, 317 Or 297, 306, 855 P2d 1093 (1993). The guidelines are meant to control and limit the discretion of trial courts in the imposition of sentences. The legislature plainly intended that, in the absence of aggravating factors, courts would be required to impose a

sentence within the presumptive range. Eliminating the need for aggravating factors would disserve that intent.

In short, only the legislature can alter its enactments and create new law that is inconsistent with its earlier intent. *See* ORS 174.010 ("In the construction of a statute, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted[.]"). Changing the sentencing guidelines in the way that the state proposes is not this court's prerogative.

We briefly turn to the state's alternative proposed remedies. As noted, the state acknowledges that each of the other alternatives that it advances would require that we remand. We decline to address those alternatives because it is unclear what course of action the parties will take on remand. We do not know whether the state will seek a new sentencing proceeding before a jury, whether defendant will waive the right to a jury proceeding, or whether the state will simply agree to allow defendant to be resentenced without taking aggravating factors into account. Given the uncertain procedural posture of this case, any opinion on the propriety of a particular remedy would be purely advisory. *See State v. Warren*, 195 Or App 656, 671, 98 P3d 1129 (2004) (declining to address remedy issue as hypothetical).

In summary, the imposition of a departure sentence based on facts that were not proved to a jury beyond a reasonable doubt violated defendant's rights under the Sixth and Fourteenth Amendments to the United States Constitution. We therefore vacate his sentence and remand the case to the trial court for resentencing.

Conviction affirmed; sentence vacated; remanded for resentencing.