No. 813            November 14, 2024            187

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

KELLY ROSE PALMER,
aka Kelly Rose Harris, aka Kelly Rose Lehuquet,
*Defendant-Appellant.*

Deschutes County Circuit Court
21CR19657; A178459

Alycia M. Herriott, Judge.

Submitted January 19, 2024.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and David O. Ferry, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Timothy A. Sylwester, Assistant Attorney General, filed the brief for respondent.

Before Shorr, Presiding Judge, Pagán, Judge, and Mooney, Senior Judge.

PAGÁN, J.

Affirmed.

**PAGÁN, J.**

Defendant appeals from a judgment of conviction for three counts of first-degree theft, ORS 164.055, and two counts of first-degree criminal mistreatment, ORS 163.205. In her sole assignment of error, she contends that the trial court erred in sentencing when it imposed upward dispositional departure sentences on the criminal mistreatment counts. Defendant argues that her departure sentences were based on an aggravating factor that was duplicative of the statute she was convicted under. Because we conclude that the aggravating factor was significantly different than the usual conduct required for conviction under ORS 163.205, we affirm.

To impose a departure sentence, the trier of fact must determine, as a factual matter beyond a reasonable doubt, that alleged aggravating or mitigating facts are present. *State v. Jimenez*, 318 Or App 221, 222, 506 P3d 500, *rev den*, 369 Or 785 (2022); *State v. Sawatzky*, 195 Or App 159, 165, 96 P3d 1288 (2004). On appeal, we will not disturb those factual findings as long as they are supported by evidence in the record. *Jimenez*, 318 Or App at 222. "Once proven, whether facts constitute 'substantial and compelling reasons' required for a departure sentence is a question of law, reviewed for errors of law." *Id.* (quoting OAR 213-008-0001). We state the facts with that standard of review in mind.

Defendant operated an adult foster care service from 2015 to 2019. During that time, she took care of two disabled adults: D and T. Due to the extent of their disabilities, D and T were unable to manage their own finances, which consisted chiefly of Social Security benefits. Defendant managed their money as a fiduciary. After the death of T, a family member alerted authorities to suspicious transactions on T's bank account, some of which had occurred after T's death. An investigation revealed that defendant had embezzled considerable sums of money from both D and T over a period of years, and she was charged by indictment with 13 counts relating to the thefts. The indictment included sentence enhancement allegations for each of the counts.

Defendant waived the right to a jury trial and pleaded guilty to three counts of first-degree theft (Counts

1, 2, and 6) and two counts of first-degree criminal mistreatment (Counts 12 and 13) in exchange for the dismissal of the remaining counts. On each charge, defendant admitted to the underlying crime, as well as the sentence-enhancement allegation: "I also admit I knew [victim] was particularly vulnerable due to [their] disability, which increased the harm caused by the offense."

At sentencing, after hearing from victim representatives and from defense counsel, who argued that the allegation was duplicative of the statute and could not be the basis for enhancement, the trial court made these findings:

The evidence before the Court is that these individuals were entirely dependent on the defendant. They were or are mostly nonverbal, need assistance with bathing, in the bathroom, eating, medical, and dental attention, and at times mobility.

The testimony is or was that [T] had the capabilities of approximately a three-year-old, [D], a five- to seven-year-old. They cannot be placed in the same category as a 14-year-old verbal child who would be a dependent due to age alone, they simply are not the same. As in the [*Boxberger v. Board of Parole*, 123 Or App 339, 858 P2d 1356 (1993)] case, I find [D] and [T] were particularly vulnerable by reason of their extreme disability as that term was used in *Boxberger*.

Based on those findings, the court imposed upward dispositional departure sentences on all counts.

As noted above, defendant assigns error to the trial court's imposition of the upward dispositional departure sentences on Counts 12 and 13. Defendant argues that the crime of criminal mistreatment based on the appropriation of a dependent person's money or property under ORS 163.205(1)(b)(D) is not significantly different from the aggravating factor of particular vulnerability under OAR 213-008-0002(1)(b)(B) and that they are thus duplicative.

By way of context for defendant's argument, we begin with the statutory scheme underlying sentencing enhancement. The grid block that a defendant falls in, based on the severity of the crime and the defendant's criminal

history, provides the presumptive sentence. *State v. Wilson*, 111 Or App 147, 150, 826 P2d 1010 (1992). Departure from that sentence requires factual findings by the trier of fact that legally constitute "substantial and compelling reasons," that is, "exceptional circumstances that overcame that presumption." *Id.*; *see* OAR 213-008-0001 ("sentencing judge shall impose the presumptive sentence provided by the guidelines unless the judge finds substantial and compelling reasons to impose a departure"); ORS 136.770, ORS 136.773 (providing for submission of allegations of enhancement facts to the trier of fact). To aid in this determination, the Oregon Criminal Justice Commission enumerated a nonexclusive list of aggravating factors, which if found, may constitute substantial and compelling reasons for a departure. OAR 213-008-0002(1)(b).

However, if an aggravating factor overlaps to a substantial degree with the statute of conviction, the factor is not substantial and compelling and therefore cannot be the basis for a departure. OAR 213-008-0002(2). That rule, which aims to prevent duplicative sentencing, reads:

> "If a factual aspect of a crime is a statutory element of the crime or is used to subclassify the crime on the Crime Seriousness Scale, that aspect of the current crime of conviction may be used as an aggravating or mitigating factor only if the criminal conduct constituting that aspect of the current crime of conviction is *significantly different* from the usual criminal conduct captured by the aspect of the crime."

OAR 213-008-0002(2) (emphasis added). Defendant argues that the elements of ORS 163.205(1)(b)(D) overlap with the vulnerable victim aggravating factor, such that the conduct is not significantly different. We examine both the statute and the aggravating factor.

ORS 163.205(1), as relevant here, provides that a person commits the crime of criminal mistreatment in the first degree if:

> "(b)   The person, in violation of a legal duty to provide care for a dependent person or elderly person, or having assumed the permanent or temporary care, custody or responsibility for the supervision of a dependent person or elderly person, intentionally or knowingly:

"*****

"(D)  Hides the dependent person's or elderly person's money or property or takes the money or property for, or appropriates the money or property to, any use or purpose not in the due and lawful execution of the person's responsibility[.]"

ORS 163.205(2)(b) defines "dependent person" as "a person who because of either age or a physical or mental disability is dependent upon another to provide for the person's physical needs." Here, defendant committed first degree criminal mistreatment by taking the money of D and T, whom she had a legal duty to care for as dependent persons.

In turn, the vulnerable victim aggravating factor under OAR 213-008-0002(1)(b)(B) applies when:

"[t]he offender knew or had reason to know of the victim's particular vulnerability, such as the extreme youth, age, disability or ill health of victim, which increased the harm or threat of harm caused by the criminal conduct."

Defendant argues that a person who is disabled to the point of dependency, such that they would fall under the criminal mistreatment statute, is inherently vulnerable, and, thus, she argues, the aggravating factor is duplicative. In essence, defendant argues that ORS 163.205(1)(b)(D) has already captured the criminal conduct of the vulnerable victim aggravating factor.

In response, the state argues that the extent of the victims' disabilities was significantly different from the typical disability that falls within the scope of a "dependent person" under the criminal mistreatment statute. The state points to, among other cases, *Boxberger*, 123 Or App 339, which the trial court relied on when it imposed defendant's sentence.

In *Boxberger*, the issue on appeal involved a petition for review of a parole board order which established the petitioner's initial release date in accordance with a judicially imposed minimum sentence. 123 Or App at 341. Factually, *Boxberger* concerned a conviction for first-degree sodomy, which applied to sodomy committed on victims under 12 years old. *Id*. The victims "were 4, 2, and less than one year

old," and the trial court had found them to be particularly vulnerable. *Id.* On appeal, the petitioner argued that age was already considered by the statute, and thus the parole board erred in accepting the trial court's duplicative sentence. *Id.* We rejected that argument, noting that the victims were substantially younger than twelve. *Id.* We reasoned that the harm done to a four-year-old could be much greater than that done to an 11-year-old, even though both were less than 120. *Id.* (citing *Jarvis v. State Board of Parole*, 96 Or App 322, 773 P2d 3, *rev den,* 308 Or 197 (1989)). We understand *Boxberger* to stand for the proposition that there are statutes under which not all victims are alike, and at some point the difference between victims (and the criminal conduct committed against them) becomes significant.

Defendant attempts to distinguish *Boxberger* and the underlying *Jarvis* case as being about parole, which involved only a preponderance of the evidence standard of proof and did not apply the "substantial and compelling reasons" test of OAR 213-008-0001. *See Jimenez*, 318 Or App at 222 (discussing the substantial and compelling reasons test). That might be relevant if the issue here were sufficiency of the evidence, but it is not. Instead, we are examining whether the statutory overlap is preclusive, and *Boxberger* involves the same fundamental principles. That *Boxberger* did not apply the substantial and compelling reasons test does not invalidate the applicability of its reasoning. Thus, we conclude that the trial court did not err in relying on the reasoning from *Boxberger* to decide that, when the legislature has defined a crime whose victims are all vulnerable, differences between individuals within the legislatively defined group of victims may still allow enhancement on the ground that some victims are particularly more vulnerable than others in the group.

Insofar as defendant raises *State v. Enemesio* to support her argument, we are not persuaded that it is factually analogous or applicable to the circumstances here, although it still stands for the proposition that some victims are more vulnerable than others. 233 Or App 156, 162, 225 P3d 115, *rev den*, 348 Or 414 (2010). In *Enemesio*, the state sought to show that the victim was particularly vulnerable because

she had been previously raped, and that the defendant knew about that rape because he had been a suspect in it. *Id.* But the state had presented only general evidence about the vulnerability of rape victims as a class. *Id.* While the state showed that the victim had been previously raped, the state did not put on evidence of how the rape had affected her specifically. *Id.* By contrast, here, there was evidence regarding the specific conditions of D and T, and we are bound by the trial court's findings that D and T were extremely disabled. *Enemesio* is thus unhelpful because, rather than being a case on statutory overlap, it turned on the state's failure to present sufficient evidence.

Having established the possibility that some victims can be particularly vulnerable under OAR 213-008-0002(1)(b)(B) in a manner that does not impermissibly overlap with a criminal statute defining a crime whose victims are all vulnerable, we now turn to the particular vulnerability alleged in this case: extreme disability. As the trial court noted "there can be degrees of physical or mental disability."

To be found guilty under ORS 163.205(1)(b)(D), as pertinent to this case, the victim must be a dependent person. Defendant argues that people who are dependent because of their disability are exactly the class of person that the statute is designed to protect. In essence, defendant contends that there is only one class of possible victims under ORS 163.205(1)(b)(D): people who are disabled in a way that makes it so they cannot manage their finances. Defendant thus implies that there is no possible gradation within this class of people because every person who cannot manage their finances due to disability would be vulnerable to having their finances mismanaged by their caretaker, meaning that there could not be criminal conduct that was significantly different than what is usual for this crime.

Defendant's argument implicitly requires us to define dependency to include a requirement of financial dependency. But a "dependent person" is defined as being "dependent upon another to provide for the person's *physical* needs." ORS 163.205(2)(b) (emphasis added); *see State v. Berry*, 293 Or App 717, 725, 429 P3d 1011 (2018) (defining physical needs under ORS 163.205(2)(b) as bodily needs

such as food and hygiene). We thus understand dependency under ORS 163.205 to be defined without consideration of the level of the victim's financial dependence.

That definition reflects that not all physically dependent persons need assistance with their finances, nor will all need the same level of assistance. A caretaker could violate ORS 163.205(1)(b)(D) even if the dependent person was competent to manage their own finances, such as by a caretaker stealing items from the dependent person's home. Even where a caretaker is entrusted with some financial responsibility, a victim might not be particularly vulnerable because they might remain able to pursue a caretaker for embezzled funds despite their disability and dependency. We conclude that there is a gradation in criminal conduct under ORS 163.205(1)(b)(D), such that there could be conduct which is significantly different from the usual conduct under the statute.

Here, the victims were not capable of independently holding defendant accountable. Indeed, defendant's misconduct went unnoticed for years because the victims were utterly unable to manage their affairs. Their disabilities were extreme. Thus, the trial court could have found that defendant's conduct was significantly different than the usual criminal conduct required for conviction under ORS 163.205(1)(b)(D), and that the finding of the vulnerable victim aggravator was not duplicative.

In sum, defendant admitted that her victims were particularly vulnerable. The trial court in turn found that the victims were particularly vulnerable by reason of their extreme disability. We conclude that the trial court did not err as a matter of law by imposing upward dispositional departure sentences on the basis that defendant's victims were particularly vulnerable.

Affirmed.